In the Matter of DENNIS M. BREEN, Appellant, against BOARD OF TRUSTEES OF THE NEW YORK FIRE DEPARTMENT PENSION FUND, et al., Respondents.

In the Matter of JOHN P. CRONIN, Appellant, against BOARD OF TRUSTEES OF THE NEW YORK FIRE DEPARTMENT PENSION FUND, et al., Respondents.

Submitted January 13, 1949; decided March 3, 1949.

*Bernard Dubin* for appellants. I. Subdivision b of the statute is not applicable in any case to a member who sustains a disability caused in or induced by the actual performance of the duties of his position. (*People ex rel. Knoblauch* v. *Warden,* 216 N. Y. 154; *Wormser* v. *Brown,* 149 N. Y. 163; *Hoey* v. *Gilroy,* 129 N. Y. 132; *Schieffelin* v. *Craig,* 183 App. Div. 515; *People ex rel. Washburn* v. *French,* 52 Hun 464; *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439; *City of New York* v. *Citizens Water Supply Co.,* 204 App. Div. 783; *People* v. *Ryan,* 274 N. Y. 149.) II. Assuming, but not conceding that subdivision b can be applied to one whose disability is caused in or induced by the actual performance of the duties of his position, said section is not applicable to petitioners on the admitted facts of this case, for the medical certificate is insufficient. (*People ex rel. Young* v. *Sturgis,* 85 App. Div. 20; *People ex rel. Cunningham* v. *Hayes,* 66 Misc. 531; *People ex rel. Bridges* v. *Adamson,* 173 App. Div. 773, 219 N. Y. 570.)

*John P. McGrath, Corporation Counsel* (*Thomas W. A. Crowe* and *Seymour B. Quel* of counsel), for respondents. It was the

mandatory duty of the board of trustees to retire the petitioners, since they had performed duty in the fire department for more than twenty years and were permanently unfit for active duty. (*Kuhn* v. *Knight*, 190 N. Y. 339; *Matter of Social Investigator Eligibles Assn.* v. *Taylor*, 268 N. Y. 233; *Matter of City of New York* v. *Schoeck*, 294 N. Y. 559; *People ex rel. Rand* v. *Craig*, 231 N. Y. 216.)

CONWAY, J. This is an application by the two petitioners in an article 78 proceeding for an order (1) directing the Board of Trustees of the Fire Department Pension Fund to rescind a resolution retiring them from all service in the fire department, and (2) directing the fire commissioner to restore them and assign them to light duty at full pay.

The Appellate Division, in reversing Special Term, dismissed the petitions " on questions of law only, there being no dispute as to the facts herein * * *."

Petitioner Breen entered the fire department on August 1, 1920, and, on July 1, 1937, attained the rank of battalion chief. On December 14, 1945, he was injured in the discharge of his duties while fighting a fire in Long Island City. The injury was " smoke narcosis and respiratory congestion " and necessitated his removal to St. John's Hospital in a department ambulance. He remained in the hospital until the end of January and was on sick leave until April 12, 1946. He was then assigned to light duties upon the certificate of the medical board of the department, which recited that, by reason of the injury sustained, he was partially permanently disabled and unfit for active duty in the uniformed force but was qualified to perform light duty sedentary in character. He served on light duty until March 31, 1947, when he was ordered to appear before the medical board for examination. In April, the fire commissioner wrote informing him that the medical board had reported that " you are disqualified, physically, for the performance of your duties in the Uniformed Force due to myocardial infarction and that this is a partial permanent disability which was caused in or induced by the performance of duty. The Medical Board also states that you are unfit for *full* fire duty." (Emphasis supplied.) There was no finding as to light duty. There was no question as to the fact that the petitioner Breen had been

incapacitated from December 14, 1945, for active fire fighting and that is what "full fire duty" means.

The petitioner Breen was thereupon retired on an annual pension of three fourths of his annual salary on the date of his retirement.

Petitioner Cronin, a fireman, entered the department in 1918. On July 15, 1930, while in response to an alarm of fire in the actual performance of his duties, he sustained injuries necessitating amputation of his left foot. The medical board certified that he had sustained a partial permanent disability rendering him incapable of active duty in the uniformed force of the department. He was assigned to light duty by the fire commissioner on January 5, 1932. On April 10, 1947, he was ordered to appear before the medical board which certified that due to the amputation, petitioner was "unfit for *full* fire duty." (Emphasis supplied.) There was no finding as to light duty and there is no question as to the fact that petitioner had been incapacitated subsequent to 1930, for active fire fighting.

On July 16, 1947, petitioner Cronin was retired pursuant to resolution of the board of trustees at an annual pension of three fourths of his salary on the date of retirement.

No claim is made here that either of the petitioners is incapable of performing the light duty to which each had been assigned. The question of statutory construction presented is whether a member of the fire department who has been certified as having sustained, in the actual performance of duty, a partial permanent disability, disabling him from performing full fire duty, and who has been assigned to "light duty", a statutory denominated duty (Administrative Code of City of New York, § B19–4.0, subd. a), may after twenty years in service be retired without his consent. In other words, whether petitioners may be retired because they have been more than twenty years in service and are unable to perform "full fire duty" and not because of inability to continue to perform the light duties to which they had been assigned and which they had been performing.

The applicable statute is contained in title B of chapter 19 of the Administrative Code of the City of New York and is entitled "FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS". We are concerned primarily with subdivisions a and b of section B19–4.0. Subdivision a provides, in part:

" § B19–4.0 Payment of pensions; disability; retirement for service.— a. The board of trustees shall retire any member who, upon an examination, as provided in subdivision d of this section, may be found to be disqualified, physically or mentally, for the performance of his duties. Such member so retired shall receive from such pension fund an annual allowance or pension as provided in this section. In every case such board shall determine the circumstances thereof, and such pension or allowance so allowed is to be in lieu of any salary received by such member at the time of his being so retired. The department shall not be liable for the payment of any claim or demand for services thereafter rendered, and the amount of such pension or allowance shall be determined upon the following conditions:

" 1. In case of total permanent disability *at any time* caused in or induced by the actual performance of the duties of his position, the amount of annual pension to be allowed shall be not less than three-fourths of the annual compensation allowed such member as salary at the date of his retirement.

" 2. In case of partial permanent disability *at any time* caused in or induced by the actual performance of the duties of his position, which disqualifies him only from performing active duty in the uniformed force, the member so disabled *shall be relieved* by the commissioner *from active service at fires and assigned to the performance of such light duties* as a medical officer of such department may certify him to be qualified to perform, *or* he shall be retired *on his own application* at not less than three-fourths of his salary at the date of his retirement from the service, on an examination, as provided by subdivision d of this section, showing that his disability is permanent." (Emphasis supplied.)

Subdivision a contains four more numerical paragraphs defining various disabilities and pensions therefor. Number three relates to a total permanent disability " not " caused in or induced by the actual performance of duty and which occurs " after " ten years' service, in which case the member " is " retired on one half of his annual salary.

The fourth relates to partial permanent disability " not " caused in or induced by actual performance of duties and which

occurs " after ten years' service " in which case the member " may " be relieved by the commissioner from active service at fires, but shall remain a member of the uniformed force, subject to the rules governing such force, and be assigned to the performance of such light duties as a medical officer of such department may certify him to be qualified to perform, or if such member " be " retired " after the expiration of ten years' service," the annual allowance shall be one half of his salary.

The fifth relates to total permanent disability " not " caused in or induced by actual performance of duties and which occurs " before the expiration of ten years' service ", in which case he shall be allowed one third of his annual salary.

The sixth governs the case of partial permanent disability " not " caused in or induced by the actual performance of duties and which occurs " before ten years' service " in which case the member " shall " be relieved by the commissioner from active service at fires, but " shall " remain a member of the uniformed force and be assigned to the performance of such light duties as a medical officer may certify him to be qualified to perform, or if such member " be retired before the expiration of ten years' service," the annual pension shall be one third of his annual compensation at the date of his retirement.

Subdivision b then follows and provides: "*Any member* of such department, who has or shall have performed duty therein for a period of twenty years or upwards, upon a medical examination, as provided in subdivision d of this section, showing that such member is permanently disabled, physically or mentally, so as to be unfit for duty, shall be retired from such force and service, and placed on the roll of the pension fund, and awarded and granted, to be paid from such fund, an annual pension during his lifetime, of a sum not less than one-half his full salary or compensation at the date of his retirement from the service." (Emphasis supplied.)

The retirement of both petitioners was under the twenty-year provision of subdivision b and not as provided by the partial permanent disability provisions of paragraph 2 of subdivision a. Petitioners argue that, since they have sustained partial perma-

nent disability in the actual performance of duty and have not been found to be disqualified from performing light duty, paragraph 2 of subdivision a protects them from retirement without their consent — at least until they have been found disqualified from performing " light duties ".

We think that the question presented was decided by us in accordance with the contention of petitioners in *People ex rel. Bridges* v. *Adamson* (173 App. Div. 773, affd. 219 N. Y. 570).

In that case the relator was a captain in the New York City fire department and sustained permanent injury in the active discharge of his duties at a fire, and by reason thereof, was assigned to perform " ' light duties ' ". Later without any change in his physical or mental condition, " and while he was performing such ' light duties,' and entirely able to perform them " (219 N. Y. 570, *supra*), the fire commissioner ordered his compulsory retirement on half pay, by reason of his original injuries. At that time the retirement and disability provisions were contained in section 790 of the Greater New York Charter (L. 1897, ch. 378, as amd. by L. 1901, ch. 466). Section 790 was not divided into subdivisions, but contained, nevertheless, five categories of disabilities which for convenience I shall refer to numerically.

The first, second and fourth (the whole section is quoted at 173 App. Div. 776–777) are the ones material here: " ▆ In case of total permanent disability, at any time, caused in or induced by the actual performance of the duties of his position, or which may occur after ten years' active and continuous service in the said fire department, the amount of annual pension to be allowed shall be one-half of the annual compensation allowed such officer or member as salary at the date of his retirement from the service, or such less sum in proportion to the number of officers and members so retired as the condition of the fund will warrant. ▆ But should permanent disability caused by injuries received in the active discharge of his duties disqualify him only from performing active duty in the uniformed force, he shall be employed at the salary received when such disability occurred in some position in the department not requiring active service as a fireman. * * *

▆ In case of partial permanent disability, caused in or induced

by the actual performance of the duties of his position, or which may occur after ten years' active and continuous service in the said fire department, the officer or member so disabled shall be relieved from active service at fires, but shall remain a member of the uniformed service, subject to the rules governing said force, and to the performance of such light duties as the medical officer of the said fire department may certify him to be qualified to perform; and the annual allowance to be paid such member or officer shall be one-half of the annual compensation allowed as salary at the date of his being so relieved, or such less sum, in proportion to the number of officers and members so retired, as the condition of the fund will warrant. * * * ''

In the other two categories in the charter (§ 790) which, I arbitrarily call the third and fifth categories, the words '' at any time '' were not used but reference was made to (1) total permanent disability '' not '' occurring during actual performance of duty or which had occurred before ten years' service and (2) partial disability '' not '' occurring in actual performance of duty or which occurred before ten years' service in which event the officer or member '' shall remain a member of the uniformed force, subject to the rules governing said force, and to the performance of such light duties as the medical officer of said department may certify him to be qualified to perform, and the annual allowance to be paid to such officer or member shall not exceed one-third of the annual compensation allowed as salary at the date of his being so relieved, or such less sum as the fire commissioner may, in his discretion, determine, or as the condition of the fund will warrant. * * * ''

Those provisions become important when we compare them with the categories provided for in the present Administrative Code, subdivision a of section B19–4.0. As we have seen (*supra,* p. 13) the words '' at any time '' appear only in the first two categories and it is the second category with which we deal here. It is also only in category (2) that there is specific provision for the retirement of the member '' on his own application at not less than three-fourths of his salary * * * on an examination, as provided by subdivision d of this section, showing that his disability is permanent.'' It is evident from

the wording of those two categories that the assignment to light duties under paragraph 2 of subdivision a of section B19–4.0 as recognition for partial permanent disability " at any time " caused in the faithful performance of dangerous duties stands on a very different basis than such assignment under paragraphs 4 and 6 of subdivision a for partial permanent disability " not " caused in or induced by the actual performance of duty. In those latter subdivisions there is contemplation of retirement of the member " after the expiration of ten years' service " or "before the expiration of ten years' service " respectively and, under subdivision b of section B19–4.0, at the end of twenty years in any event.

Thus it is apparent that while the present provisions of the Code have liberalized the allowances and the qualifications for coverage, the operative effect of the two statutes is substantially the same.

The " twenty-year " provision was also contained in section 790. It followed category (5) without change in paragraph. It was as follows: " Any officer or member of the uniformed force of the said fire department of The City of New York, who has or shall have performed duty therein for a period of twenty years or upwards, shall upon his own application, in writing, or upon a certificate of the board of medical officers showing that such member is permanently disabled, physically or mentally, so as to be unfit for duty, be retired and dismissed from said force and service, and placed on the roll of the relief or pension fund, and awarded and granted, to be paid from the said relief or pension fund, an annual pension during his lifetime of a sum not less than one-half of the full salary or compensation of such member so retired. * * *." That is substantially the same as under the Code (§ B19–4.0, subds. b, c).

The argument that that category was controlling in a case such as the instant one, was made in this court in the *Bridges* case (*supra*). Point II of the corporation counsel's brief there read: " Section 790 of the Charter does not contemplate that a member of the force, who has performed duty *for more than twenty years,* and who has been certified as being permanently disabled physically or mentally, so as to be unfit for duty, shall simply be relieved from service at fires and assigned to some position not requiring active service or the performance of light

duties, at the same salary he was receiving; it requires that he shall be retired and dismissed on a pension.'' (Emphasis supplied.) That argument, again made here, we rejected.

Bridges had been in the fire department for twenty-three years. The board of medical officers of the fire department had certified that he was '' totally permanently physically disqualified for the performance of his duties '' and that such '' total permanent physical disability was caused in or induced by the actual performance of the duties of his position.'' (*People ex rel. Bridges* v. *Adamson,* 173 App. Div. 773, 774, *supra.*) The order of retirement contained the same recitations. While the Appellate Division in that case wrote that the question whether Bridges could be retired by the commissioner in any event under the '' twenty-year '' provision was not before it, when the case reached this court that question was squarely presented and all the arguments now presented in the instant case by the respondents were rejected. We held that it was the purpose of section 790 that any member of the uniformed force in the active discharge of his duty at a fire and permanently disabled, but disqualified only from performing active duty in the uniformed force at fires, was entitled to employment at his regular salary at some position not requiring active service as a fireman and we affirmed the order restoring Bridges to light duty and his full salary. This was not a new conception of legislative intent. The same department in *People ex rel. Young* v. *Sturgis* (85 App. Div. 20, 23–24) affecting a fireman had held that the '' evident intention of this provision of the charter is to encourage brave and faithful discharge of an active fireman's dangerous duties, and if, in the discharge of such duties, he receives injuries which do not totally and permanently disqualify him from all duties in the department, he shall be employed in ' light duties ' and his salary shall be continued.''

The *Bridges* case (*supra*) has never been challenged in our court or in the Appellate Division in the more than thirty years since its decision although section 790 of the charter remained the same in substance, insofar as material here, until the present charter and Administrative Code were adopted. (See Local Laws, 1936, No. 44 of City of New York, § 1; Administrative Code, § B19–5.0, subd. a, par. 4, repealed and re-enacted by

Local Laws, 1940, No. 3 of City of New York, as Administrative Code, § B19–4.0, subd. a, par. 2).

Disregarding length of service for the moment — which, incidentally, the Legislature did not since it used the phrase " at any time " — paragraph 2 of subdivision a of section B19–4.0 creates two absolute rights for those qualifying under it: (1) the right to be placed on light duty; *or* (2) the right to *voluntary* retirement at three-quarters pay after physical examination showing permanence of disability. Those rights are valuable ones — so valuable that the Legislature deemed them important enough to leave them in the alternative *to the discretion of the individual partially permanently disabled fireman* and not to the discretion of the commissioner or to the board of trustees. To hold as respondents urge, however, would, *after twenty years of service,* penalize the member by destroying both rights and leaving them both to the discretion of the board of trustees — the retirement pay to be as low as one half of the salary of the one retired. Examples of the anomalous results of such construction are discussed in the opinion at Special Term and in the briefs of petitioners and need not be labored here. Suffice it to say that it would permit the retirement *forthwith* at one half of his salary of a member of the department who was partially permanently disabled *after* serving for more than twenty years, in direct opposition to the express words " at any time " contained in paragraph 2 of subdivision a of section B19–4.0.

The general rule of statutory construction is that it is always presumed, with reference to a statute, that no unjust or unreasonable result was intended by the Legislature and the statute, unless the language forbids, must be given an interpretation and application consonant with that presumption. (*Matter of Meyer,* 209 N. Y. 386, 389; *People* v. *Santoro,* 229 N. Y. 277, 281, 282; *Archer* v. *Equitable Life Assur. Soc.,* 218 N. Y. 18, 25.) Especially must that be the case where more than twenty years after the rendition of a decision by this court, a codifying statute is enacted similar, insofar as material here, to the statute earlier construed. (See Greater New York City Charter, § 790; Local Laws, 1936, No. 44 of City of New York, § 1; Administrative Code, § B19–5.0, subd. a, par. 4, repealed and re-enacted by Local Laws, 1940, No. 3 of City of

New York, as Administrative Code, § B19–4.0, subd. a, par. 2.)

Moreover the new New York City Charter of 1938 contained the following two applicable sections:

" § 953. RIGHTS OF OFFICERS AND EMPLOYEES PRESERVED.— Nothing in this charter contained shall affect or impair the rights or privileges of officers or employees of the city or of any agency existing at the time when this charter shall take effect, or any provision of law in force at the time when this charter shall take effect and not inconsistent with the provisions of this charter, in relation to the personnel, appointment, ranks, grades, tenure of office, promotion, removal, pension and retirement rights, civil rights or any other rights or privileges of officers or employees of the city generally or officers or employees of any agency."

" § 951. RELATION OF THIS CHARTER TO EXISTING LAW.— It is the purpose and intent of this charter to set forth the structure of the city government and the manner in which it is to operate, in accordance with the provisions of chapter eight hundred sixty-seven of the laws of nineteen hundred thirty-four, and to continue in force all provisions of the Greater New York charter and all other provisions of law affecting the city and the counties within the city, not inconsistent with the provisions of this charter, in force at the time when this charter shall take effect, until repealed or amended or until continued in the revision, simplification, consolidation, codification, restatement and annotation thereof now in preparation, to take the form of an administrative code pursuant to chapter four hundred eighty-three of the laws of nineteen hundred thirty-six."

When the Administrative Code was adopted it contained the following section: " § 963–1.0. EXISTING RIGHTS AND REMEDIES SAVED.— No existing right or remedy of any kind shall be lost or impaired by reason of any provision of the code."

It also contained section 982–1.0 which is entitled " LEGISLATIVE INTENT " and reads in part as follows: " * * * If in this code there shall have been incorporated any provision of law, general, special or local, or a provision of any ordinance, that heretofore shall have been superseded or specifically or impliedly repealed, the incorporation of any such provision shall not revive such superseded or repealed provision, nor shall such incorporation be construed to indicate any legislative

determination that such provision had not been theretofore so superseded or repealed. If in this code there shall have been incorporated any new provision, which is not a revision, consolidation, codification, continuance or restatement of the provisions of a statute, local law or ordinance applicable to the city of New York and in force on the thirty-first day of December, nineteen hundred thirty-seven, except as the same shall have been necessary to harmonize the provisions of this code with the provisions of the New York city charter, such new provision shall not become effective, but shall be deemed an inadvertence or error."

*Matter of City of New York* v. *Schoeck* (294 N. Y. 559), is not apposite. Schoeck voluntarily sought retirement but was continued in office because members of the board of trustees were evenly divided upon the question whether his disability was or was not caused by actual performance of duty. The language of the opinion must be read against the background of the facts. We directed the board to retire Schoeck at one half of his salary until it should by resolution " ' determine the cause ' " of his disqualification, with the further provision that if later the board fixed the amount of his allowance at more than one half, he was to receive the excess from the date of his retirement. (P. 570.) We refused to countenance his receipt of full pay while performing no duties.

It is clear, in view of the subdivisions of the charter and the Code already discussed, that when the Legislature used the words " at any time " in paragraphs 1 and 2 of subdivision a *alone,* the intention was to distinguish those two cases of service-incurred disabilities, from all other disabilities which were specifically made compensable upon various periods of service. The use of the phrase " at any time " in paragraphs 1 and 2 of subdivision a, when specific periods of service are carefully mentioned in the other subdivisions, indicates clearly that no time limitation was intended. The clear intent of paragraph 2 of subdivision a is to continue the partially permanently disabled fireman in the same position as a member of the department as he was in prior to his injury in the actual performance of duty with the right to continue such light duties as a medical officer of such department may certify him to be qualified to perform, or within his own sole discretion, to permit him to retire on a pension of three fourths of his salary. Failing

to so elect, he may not thereafter be compelled to retire on the basis of his service-incurred disability if he is still qualified to perform such light duties.

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, DESMOND and DYE, JJ., concur; FULD, J., concurs in result.

Order reversed, etc.