STATE OF CONNECTICUT *v.* ROBERT R. WARD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.

Argued October 12—decision released December 28, 1976

*Donald F. Zezima,* with whom, on the brief, were *Lawrence A. Christiano* and *Mark F. Katz,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

LONGO, J. The defendant was charged with wrongfully appropriating and converting $88.25 in collected tolls to his own use while acting as a toll collection supervisor for the state of Connecticut, in violation of then General Statutes § 53-354.[1] He was tried by a jury of twelve and found guilty, whereupon he was sentenced to pay a fine of $2000 and to be incarcerated for a term of one year. The defendant appealed from the judgment, assigning

---

[1] "[General Statutes] Sec. 53-354. EMBEZZLEMENT BY PUBLIC OR CORPORATION OFFICER OR FIDUCIARY. Any officer, agent or employee of the state or of any public, municipal or private corporation, any executor, administrator, guardian or conservator or any trustee under a testamentary or express trust, who wrongfully appropriates and converts to his own use or to the use of any other person any money, funds or property belonging to, held in trust by or under the control of the state or such corporation, estate, ward, trust or other person, shall be fined not more than ten thousand dollars or imprisoned not more than ten years or both." (Repealed effective October 1, 1971.)

error in the admission of certain evidence and in several segments of the charge to the jury; in the denial of his motions to dismiss and to set aside the verdict; in the court's failure to find certain facts and in its finding of one fact without evidence.

Evidence was presented at the trial from which the jury reasonably could have found the following facts: On November 25, 1970, the date of the alleged crime, the defendant, Robert R. Ward, was employed as a supervisor of the Greenwich toll station. The Greenwich toll plaza consisted of sixteen lanes, including automatic and manual lanes, with two lanes, numbers seven and eight, equipped for both manual and automatic collection. The number of automobiles passing through lanes seven and eight was measured by two devices; the first was a loop buried in the roadway which counted vehicles and the second was a visible rubber treadle which counted axles. The treadle count was automatically printed by machines on paper in the administration building. The count from the loop registered in the individual toll booths and was transcribed by hand, at the end of each day, onto the tops of the printed sheets produced by the treadle machine. Coins deposited in the automatic toll collection equipment proceeded through a counting mechanism and into an individual locked vault for each lane. Only supervisors had access to the locked audit room and, though the large vault was customarily unlocked, the small coin vaults kept therein were automatically locked. There were four keys to the small coin vaults, three of which were in the possession of the toll station's superintendent and two cashiers. The fourth key had disappeared sometime prior to November, 1970, and was never found. The automatic collection equipment was able to record auto-

mobiles passing through a lane without paying a toll. Partial toll payments registered as full violations and the toll collection procedure included the addition of loose change which missed the collection basket and was found on the pavement near the basket. On November 27, 1970, Robert Strong, a service technician, examined lanes seven and eight and found that two pencils had been jammed in the automatic vehicle counting mechanism to prevent the vehicle counter from registering. An audit by Everett Whitmore, who was employed by the state department of transportation, revealed that a minimum amount of $88.25 was missing from the toll receipts for lanes seven and eight on November 25, 1970. The report also disclosed that there were substantial discrepancies between the treadle and loop counts of vehicles on various days involving all the toll lanes.

On November 27, 1970, the two pencils which had been removed from the vehicle counting machines for lanes seven and eight were turned over to superintendent Anthony Stramiello who determined that the machines had stopped counting between 3 and 4 p.m. on November 25, 1970, when the defendant was on duty. A police investigation was then initiated. On April 6, 1971, Detective Corporal Robert Geoghan of the Connecticut state police interviewed the defendant at the Greenwich toll plaza. The defendant denied any knowledge of the pencils which had been jammed in the counting machines. In response to questioning the defendant admitted that he had purchased an eighteen-foot power boat for cash in 1969 and that he was able to live above the level dictated by his income from the state because he and his wife gambled and he hustled prostitutes.

It is from the admission of this evidence that the defendant's first substantial assignment of error arises. The defendant renews in this court his objection made at trial that the admission of testimony by Detective Geoghan relating statements by the defendant concerning his extra income were inadmissible on the ground that they were irrelevant. When asked to describe his conversation with the defendant, Detective Geoghan testified, over the defendant's objection: "He was asked if it wasn't a fact that he purchased a four thousand dollar, 18-foot power boat in 1969, and paid cash for it. He said he did; that his wife hit the policy play numbers. He said his wife also helps him with extra income. And he said he also hustles prostitutes on the side." Detective Geoghan testified further, over the defendant's objection, that the defendant had said that he owned two automobiles and a home with a mortgage. We agree with the defendant that the above testimony was irrelevant and prejudicial to the defendant and should not have been admitted into evidence.

The information in the present case charged the defendant with embezzling $88.25 on or about November 25, 1970. The first test of the admissibility of any evidence is whether it is relevant. Our decisions have emphasized the principle that the court must be allowed wide discretion in ruling on the relevancy of evidence. *State* v. *Evans,* 165 Conn, 61, 64, 327 A.2d 576; *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36; *Johnson* v. *Newell,* 160 Conn. 269, 276, 277, 278 A.2d 776; *State* v. *Carnegie,* 158 Conn. 264, 273, 259 A.2d 628. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." *Federated Department*

*Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 82, 291 A.2d 715. In order logically to advance the resolution of an issue by the trier of fact, however, proffered evidence must render the existence of a material fact in the case more certain or more probable than it would have been without the evidence. *Federated Department Stores, Inc.* v. *Board of Tax Review,* supra; *State* v. *Belanger,* 148 Conn. 57, 167 A.2d 245; see McCormick, Evidence (2d Ed.) § 185. We fail to see how evidence that the defendant had paid $4000 cash for a power boat in 1969 logically increases the probability that he embezzled $88.25 in 1970. While evidence of sudden affluence may be relevant when it appears at or subsequent to the time of the alleged crime of embezzlement; *Hansberry* v. *United States,* 295 F.2d 800 (9th Cir.); evidence of affluence before the time of the alleged embezzlement does not bear any probative relationship to the subsequent crime. See annot., 91 A.L.R.2d 1046, 1049, § 3, and cases cited therein. It appears from the transcript of the trial that the state suspected the defendant of having taken, over a period of time preceding November, 1970, significantly more than the $88.25 alleged in the information.[2] This suspicion cannot alter the fact that the state only charged the defendant with taking $88.25 on or about November 25, 1970, and was faced with the task of establishing that proposition beyond a reasonable doubt, and no other. Evidence can be relevant only if it tends to establish a fact in issue. *State* v. *Lombardo,* supra; *Federated Department Stores, Inc.* v. *Board of Tax Review,* supra. The question whether the defendant had experienced a

---

[2] For example, Detective Geoghan testified to the following conversation with the defendant: "He was asked if it was possible that he was spending more than ten thousand dollars a year above his yearly salary."

sudden large increase in wealth prior to the alleged crime was not placed in issue by the information. The evidence that he had lived beyond his means and the testimony as to how he had acquired his extra income, insofar as both related to a period prior to the alleged crime, were irrelevant to the determination whether he had embezzled a specific, relatively small sum on or about November 25, 1970. The testimony could have been highly prejudicial to the defendant in the minds of the jurors. For that reason, we find error in the court's admission of the testimony in question. See *State* v. *Ferraro,* 160 Conn. 42, 45–46, 273 A.2d 694.

Since the case must be sent back to the trial court for further proceedings and since we will not speculate on what will happen in the trial court, we need not discuss all of the defendant's assignments of error. We do, however, feel that we should provide guidance on one further issue. *Thomas* v. *Commerford,* 168 Conn. 64, 70, 357 A.2d 476.

The state called to the stand Everett Whitmore, who had issued a report on the alleged shortages at the Greenwich toll station. On cross-examination, the defendant's counsel, Attorney Barry J. Boodman, sought to undermine the accuracy of Whitmore's calculations by attacking the figures upon which they were based. It was crucial to the defense strategy to attack those figures in the hope of instilling a reasonable doubt in the jurors' minds that any money actually had been taken from the toll lanes. During this cross-examination, the court interjected the following comment: "There is also, Mr. Boodman, a presumption in the law that . . . [the state's figures] are accurate until shown differently. They are being kept in the usual course of business. The

jury at some time will be instructed accordingly." Court adjourned for the day shortly after the above comment was made. When court reconvened counsel for the defendant requested the court to instruct the jury to disregard the closing comment of the previous session. The court refused and counsel excepted. We find the court's statement erroneous and harmful to the defendant.

It has long been recognized that a record kept in the usual course of business is admissible. General Statutes § 52-180; *State* v. *Vennard,* 159 Conn. 385, 397, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625; *Mucci* v. *LeMonte,* 157 Conn. 566, 569, 254 A.2d 879; *Orzechowski* v. *Higgins,* 146 Conn. 463, 465, 152 A.2d 510; *Szela* v. *Johnson Motor Lines, Inc.,* 145 Conn. 714, 723, 146 A.2d 910. It is equally as clear that business records do not carry any presumption of accuracy merely because they are admissible. The credibility of such records remains a question for the trier of fact. *Boland* v. *Vanderbilt,* 140 Conn. 520, 526, 102 A.2d 362; *Nitka* v. *Betlinski,* 137 Conn. 314, 316, 77 A.2d 89.

Furthermore, the defendant sought to discredit Whitmore's report by establishing that the mechanical devices used to register traffic passing through the toll gates were inaccurate. The defendant elicited evidence tending to establish that the two mechanical counting devices agreed with each other on only forty-five of 240 transactions from November 1 through November 30, 1970. There was also substantial evidence that there were significant differences at many of the toll lanes between the amount of money actually deposited and the amount which should have been deposited according to the

treadle and loop counts. There was evidence that on November 25, 1970, lanes other than seven and eight showed significant discrepancies between cash intake and the amount of traffic recorded as having passed through the toll gate. Had the defendant been able to raise a reasonable doubt concerning the accuracy of the mechanical counters, Whitmore's calculations would have been subject to challenge. Though this court has recognized the principle that the actions of a public officer acting officially are entitled to a presumption of accuracy; *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 568, 345 A.2d 520; *State* v. *Lenihan,* 151 Conn. 552, 555, 200 A.2d 476; nowhere have we gone so far as to condone a presumption that a machine is accurate. We do not suggest that the records produced by the machines were inadmissible; see *State* v. *Tomanelli,* 153 Conn. 365, 371, 216 A.2d 625; rather, we state that, once admitted, their accuracy was a question for the trier of fact. The court, by its comment on the accuracy of the state's figures, may have seriously misled the jury by nullifying the defendant's attempt to discredit the reliability of the figures produced by the machines.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.