JOHN PATRY ET AL. *v.* BOARD OF TRUSTEES,
FIREMEN'S PENSION FUND
(11094)

PETERS, HEALEY, PARSKEY, GRILLO and BIELUCH, Js.

Argued March 31—decision released June 21, 1983

*William F. Gallagher,* with whom were *Elizabeth A. Dorsey,* and, on the brief, *Roger B. Calistro,* for the appellant (defendant).

*Gerald F. Stevens,* for the appellees (plaintiffs).

PETERS, J. The principal issue in this case is the construction of the provisions of a city's home rule ordinance governing the calculation of the pension to which a retiring chief of the fire department of the city's first taxation district is entitled. The plaintiffs, John Patry and others, taxpayers and employees of the first fire taxation district of the city of West Haven with an interest in the "Firemen's Pension Fund," brought an action to enjoin the defendant, Board of Trustees, Firemen's Pension Fund of West Haven, Connecticut, from using the pension fund to pay a retirement pension to Joseph C. Howell, and for a declaratory judgment to determine whether the action of the trustees in granting Joseph C. Howell a pension was valid. After a hearing before the court,[1] the defendant was permanently enjoined from paying the pension as presently formulated, and the action of the defendant in for-

---

[1] At the hearing, the parties stipulated that the case would be decided on its merits rather than as a special hearing on the plaintiffs' application for a temporary injunction. The parties also stipulated that the plaintiffs had standing to bring their cause of action.

mulating the pension was declared invalid, null and void. After the defendant's motion to reargue and to set aside the judgment was denied, the defendant appealed.

There is no dispute about the underlying facts. Joseph C. Howell, after thirty-one years of service, decided to retire as chief of the fire department of the first taxation district of West Haven. At Chief Howell's request, the defendant board of trustees of the firemen's pension fund met to act on his retirement and to determine the amount of his pension. The board approved his retirement and set the pension at 70 percent of his former salary. The 70 percent figure was opposed by a representative of the firefighters' union who claimed that the percentage was not authorized by the home rule ordinance of West Haven.

In determining the percentage figure, the board relied on the wording of § 5 (a) of the home rule ordinance adopted by the city on November 6, 1973. The home rule ordinance provides, in relevant part, for disbursements from the firemen's pension fund as follows: "(a) When any full-time employee of said district has served as such for a period of at least twenty-five years, the board of trustees shall, on his application in writing, retire such employee and pay him an annual pension in monthly installments during his life time of an amount equal to not less than one-half of the annual salary received by such employee preceding his retirement. In addition thereto any such employee who has served more than twenty-five years shall receive an additional two percent of his salary received preceding his retirement for each year over twenty-five, but in no event shall his pension exceed seventy percent of such salary." The board, in setting the Howell pension, took into account the following considerations: (1) the nature of the responsibilities borne

by the chief of the department by virtue of his position; (2) the length of his service in the department and the nature of his service, which necessitated long workdays without overtime compensation; (3) the retirement of a prior chief of the department, under prior legislation, at 70 percent of his salary. The board took the view, according to testimony at the trial court hearing, that once someone had served for twenty-five years, the board had discretion to fix a pension at some percentage between the minimum of 50 percent and the maximum of 70 percent. Although the 70 percent figure might have been rationalized by selecting a base figure of 58 percent for the first twenty-five years of service and then adding 2 percent for each of the additional six years, or an additional 12 percent, that was not the basis upon which the board proceeded.

The trial court enjoined the defendant board from paying Howell the pension as it had been formulated. The court determined that the ordinance plainly limited additions to the base percentage to 2 additional percent of salary for each year's service over twenty-five. The court further held that the ordinance conferred no discretion upon the defendant to modify its statutory provisions, since such a grant of discretionary authority would have required explicit statutory language. In a motion to reargue, the defendant challenged both the substance and the form of the trial court's judgment.

The defendant raises on this appeal the same issues that were presented to the trial court in the motion to reargue. The defendant claims that the trial court erred: (1) in construing the language of the home rule ordinance to preclude a 70 percent pension for retiring Chief Joseph C. Howell and (2) in enjoining the defendant from payment of said pension rather than remanding the matter for further action by the board of trustees. We find no error.

Since the propriety of the action taken by the defendant necessarily turns on construction of § 5 (a) of the West Haven Home Rule Ordinance, it is helpful to review the history of the ordinance. Although there is apparently no discoverable history of the discussions that led to its approval, and therefore no legislative history as that term is normally understood, it is possible to trace the history of the ordinance through the legislative acts which preceded it. Starting in 1937, the General Assembly enacted a number of special acts concerning pensions for members of the fire department of the first taxation district of West Haven. The first of these special acts provided, for any member of the fire department who had contributed to a "firemen's relief fund," a pension "equal to one-half of his regular monthly pay." 22 Spec. Acts 797, No. 399, § 5 (1937).[2]

---

[2] 22 Spec. Acts 797, No. 399 (1937) reads:

"AN ACT CONCERNING THE FIRE DEPARTMENT OF THE FIRST TAXATION DISTRICT OF THE TOWN OF WEST HAVEN.

"*Be it enacted by the Senate and House of Representatives in General Assembly convened:*

"SECTION 1. There shall be created in the first taxation district of the town of West Haven a fund known as the 'Firemen's Relief Fund.'

"SEC. 2. The board of finance of the town of West Haven shall annually appropriate to said fund a sum not less than five hundred dollars, the first appropriation thereto to be made upon the passage of this act.

"SEC. 3. The paid men of the department shall pay into said fund a sum equal to two per cent of their yearly salary, pro-rated monthly, in addition to the annual appropriation of the board of finance.

"SEC. 4. Said fund shall be under the control of a board of trustees which shall consist of the board of fire commissioners, the chief of the fire department, the marshal of the fire department, the first selectman and the treasurer of the town of West Haven. The board of trustees shall make all rules and regulations for the control and deposit of said fund. The treasurer shall receive and deposit all moneys connected with said fund, and make such payments as ordered by a majority of the board of trustees.

"SEC. 5. When any permanent member of the West Haven fire department shall have attained the age of sixty-five years, or shall have served for a period of not less than twenty-five years as a member of said department, and shall have paid into said fund as provided herein, he shall be retired on a monthly allotment equal to one-half of his regular monthly pay.

This act was amended in 1967 to establish a pension fund similar in form to that of the present ordinance. The 1967 special act entitled a fireman, after twenty-five years of service, to a pension "of at least one-half of his annual salary" and "[i]n addition thereto . . . [allowed him to] receive an additional two per cent of his basic salary . . . for each year over and above the said twenty-five years of service, but in no event shall his pension exceed seventy percent of his basic salary at the time of his retirement." 33 Spec. Acts 137, No. 144, § 1 (1967).[3] This act was amended in 1969 in a

---

Any paid man may be retired on account of illness, or being totally or partially incapacitated by injury, incurred in the discharge of his duty, after an examination by three reputable physicians, if any two shall certify in writing that such fireman is unable to perform to the full extent his duties as fireman, and he shall be allowed a pension as herein provided from said fund.

"SEC. 6. Each fireman, receiving pay as such at the time of the passage of this act, shall, before removal, be entitled to a hearing before the board of fire commissioners, on charges in writing, filed with such fireman six days before the time of such hearing, and, if aggrieved by any decision of such board, may appeal to the superior court for redress.

"SEC. 7. No future appointment shall be made to the permanent staff without an open competitive examination being held for the purpose of filling any vacancy that may exist. Such examination shall be conducted by a committee of three citizens named by the board of fire commissioners for such purpose."

[3] 33 Spec. Acts 137, No. 144 (1967) reads:

"AN ACT PROVIDING A MINIMUM PENSION FOR ANY PERMANENT MEMBER OF THE WEST HAVEN FIRE DEPARTMENT AND THE WIDOW OF A RETIRED MEMBER.

"SECTION 1. Section 5 of number 399 of the special acts of 1937, as amended, is amended to read as follows: When any permanent member of the West Haven fire department shall have attained the age of sixty years and shall have paid into said fund as provided herein, he shall be retired, or when any permanent member of said department has, or shall have, performed duty therein for a period of not less than twenty-five years, he shall, upon his application in writing, or at any time upon a physical examination made by three reputable physicians and certified by two such physicians showing that such member is permanently disabled, physically or mentally, so as to be unfit for duty, be retired from said service and placed on the pension list and shall be awarded an annual pension to be paid in monthly

variety of ways but with an express reservation that the amendment was not to affect "interests of any past or present fire department employee in any pension fund." 34 Spec. Acts 79, No. 100, § 6 (1969). The home rule ordinance that we must construe was approved in 1973. It continues the basic plan of the 1967 special act, but introduces a linguistic substitution of "not less than" for "at least" in the description of the basic twenty-five year pension.

This history provides support for some of the defendant's claims, but not for all of them. We conclude, as the defendant argues, that the present ordinance, when it authorizes a pension of "not less than one-half" of a retiree's annual salary counsels a disposition that is the same as if the ordinance had read "at least one-half." See *Treat* v. *Town Plan & Zoning Commission,*

instalments, during his lifetime, at the rate of at least one-half of his annual salary at the time of his retirement, provided such member shall have contributed to the firemen's relief fund of West Haven fire department an amount equal to three per cent of his annual salary. In addition thereto, said member of the West haven fire department who has served more than twenty-five years in the fire department shall receive an additional two per cent of his basic salary at the time of his retirement for each year over and above the said twenty-five years of service, but in no event shall his pension exceed seventy per cent of his basic salary at the time of his retirement. No pension granted under the provisions of this section shall be revoked, repealed or diminished, and no member having a right to retire on a pension at the time this act shall take effect shall be deprived of such right by reason of his remaining a member of said fire department or by reason of any provisions of this act. No person eligible under the provisions of this act shall receive a pension of less than three thousand dollars a year.

"Sec. 2. The first sentence of section 4 of number 490 of the special acts of 1949 is amended to read as follows: Upon the death of any member of the West Haven fire department, who shall have served as a paid and permanent member and who shall have actually contributed to said firemen's fund, the widow of such member shall receive, until her death or remarriage, out of said fund, a monthly sum equal to one-half the compensation received by such member at the time of his death, if in active service, or a monthly sum equal to the full pension received by such member at the time of his death, if retired."

145 Conn. 136, 139, 139 A.2d 601 (1958). We are, however, unpersuaded that this conclusion requires us to hold that the ordinance confers discretion on the board of trustees to award a pension in any amount between 50 and 70 percent. Reading the ordinance as a whole, we construe its reference to "not less than" as authorizing a payment of a pension beyond the amount of 50 percent of a retiree's annual salary only when an additional pension is earned by additional years of service. Nothing in the ordinance, textually or historically, confers upon the board the authority to consider the quality of the retiree's service or to provide the present retiree a pension comparable to that paid to former retirees who may or may not have been similarly situated.[4]

The defendant, while recognizing that the home rule ordinance does not expressly confer discretionary authority on the board, claims that the ordinance should be read to imply such authority. It argues that discretion for the board may be inferred from the combination of phraseology in § 5 that allows the board to set the pension at "not less than one-half" and "in no event . . . [to] exceed seventy percent." If we assume that the "not less than" figure may be set at more than 50 percent, say at 58, then the addition of 12 percent for Chief Howell's six years of additional service would bring him to the 70 percent level. Even if we were to assume arguendo that the ordinance could reasonably be interpreted to confer this degree of discretion on the board, it is clear on the present record that the

---

[4] The evidence concerning prior practice was very imprecise. Steven Alderman, a member of the defendant board of trustees, and the only witness for the defense, testified that "the previous Chief had been retired also at seventy percent." Later he clarified that this was prior Chief William Johnson. On cross-examination, he noted that Johnson's retirement antedated the enactment of the present ordinance. There were few particulars about the service rendered by the prior chief.

board exercised no such discretion, for the testimony at the trial expressly disclaimed reliance on such a formula. In the alternative, the defendant relies on other provisions of the home rule ordinance which authorize the board of trustees "to make all rules and regulations for the control and deposit of [the pension] fund." This reliance on Chapter 5, § 4, proves both too little and too much. On the one hand, the provisions of § 4, because they deal with general authority over "control and deposit," must, in case of conflict, give way to the more specific provisions of § 5 that expressly govern "disbursements from [the pension] fund." Accepted rules of construction assign precedence to provisions of special applicability over those of general applicability. *Budkofsky* v. *Commissioner of Motor Vehicles,* 177 Conn. 588, 592, 419 A.2d 333 (1979); *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 401–402, 288 A.2d 435 (1971). On the other hand, the provisions of § 4 demonstrate that the drafters of the ordinance knew how to select language that would unequivocally confer discretion. Comparison of the broad powers conferred by § 4 with the narrow powers conferred by § 5 is indicative of an intent not to vest the board with discretion to determine the amount of pension funds to be paid to a retiree.

The defendant's final argument suggests that the designation of the defendant as the administrative agency responsible for disbursement of the pension fund necessarily confers upon it discretionary authority to implement the provisions of the home rule ordinance in a manner consistent with its view of underlying policy. The defendant relies on cases such as *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 440–42, 423 A.2d 87 (1979), where we held that a commission, acting in a quasi-judicial capacity to determine whether a claimant had sustained a service-

connected injury, had the right to exercise discretion to approve or disapprove applications for retirement benefits. *Riley* does not, however, stand for the proposition that a statute impliedly confers unfettered discretion upon an administrative agency by the mere act of entrusting the agency with the authority for disbursement of pension funds. Our case law, to the contrary, has consistently held that delegation of discretionary authority is valid only when premised upon a positive statutory basis supported by sufficient statutory guidelines. When the assertion of such discretionary authority conflicts with specific legislative mandates expressly providing a different result, the purported exercise of discretion is invalid. *Wadhams* v. *Torrington,* 152 Conn. 454, 457–58, 208 A.2d 549 (1965); *Wilson* v. *West Haven,* 142 Conn. 646, 656–57, 116 A.2d 420 (1955); see generally *South East Property Owners & Residents Assn.* v. *City Plan Commission,* 156 Conn. 587, 590–91, 244 A.2d 394 (1968); *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5 (1964). Courts in other jurisdictions have also refused to read enabling legislation to confer unlimited discretion on administrators of public pension funds. See, e.g., *Bergman* v. *Board of Trustees of Firemen's Retirement System,* 425 S.W.2d 143, 146–47 (Mo. 1968); *Breen* v. *Board of Trustees,* 299 N.Y. 8, 19, 85 N.E.2d 161 (1949); *State ex rel. Henderson* v. *Schuele,* 25 Ohio St. 2d 179, 182, 267 N.E.2d 590 (1971).

It is useful, finally, to consider the consequences that would ensue if we were to adopt the defendant's construction of the pension ordinance. It is undisputed that § 5 establishes a floor, retirement at half pay at age sixty-five after twenty-five years of service, and a ceiling, retirement at 70 percent of pay. It also establishes a pension ladder, with each rung representing an additional 2 percent of pay for each year of service past

twenty-five years. The defendant's construction of these provisions would give the pension board the unfettered discretion to establish the floor at any rung of the ladder or even, as in the present case, to make it coincident with the ceiling. So construed, the ordinance violates the rule that an enactment conferring legislative power upon an administrative agency must not only declare legislative policy, but also establish primary standards for carrying out the policy or lay down an intelligible principle to which the administrative body must conform. *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 149, 384 A.2d 337 (1977); *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586 (1940). The implications of such a confrontation are clear. Even if, arguendo, a literal reading of § 5 would confer unfettered discretionary authority upon the defendant, such a literal reading would have to be abandoned. "We are bound to assume that the legislature intended, in enacting a particular law, to achieve its purpose in a manner which is both effective and constitutional. *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 674, 368 A.2d 20 (1976); *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 507–508, 356 A.2d 139 (1975); *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954)." *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981). In determining the appropriate sphere of administrative authority, "a truly helpful rule in the search for . . . legislative intent . . . is that where one construction will sustain the validity of an act while another will not do so, a court is justified in adopting the former even at the expense of departing from the literal meaning of the words used." *Wilson* v. *West Haven,* supra, 654–55. We therefore do not accept the defendant's construction of the pension ordinance.

Having concluded that the trial court correctly determined that the defendant board had exceeded its authority by awarding Chief Howell a 70 percent pension, we must now determine whether the trial court erred in its order permanently enjoining the defendant from paying him such a pension. The defendant urges that this order was inappropriate for two reasons: (1) the proper remedy was to remand the matter to the defendant for reformulation of the pension payment and (2) the plaintiffs failed to show such irreparable injury as was required to sustain the injunction. We disagree with both of these claims of error.

With respect to the entry of an injunctive order in lieu of a remand, the defendant might have a stronger case if the trial court had issued a blanket injunction forbidding any pension payment whatsoever to Chief Howell. That, however, is not the tenor of the judgment. The court's injunction against payment of funds was carefully limited to preclude only "the payment of any funds for any purpose under the provisions of or related to the pension of Joseph C. Howell *as presently formulated.*" (Emphasis added.) In light of the court's conclusions of law, such an order was clearly warranted. It in no way precluded the defendant from reconvening, at any time, to formulate a pension plan within the bounds set by the pension ordinance.[5]

The defendant's attack on the order because of a claimed lack of a showing of "irreparable harm" is equally groundless. In part, this argument simply restates the proposition, which we have rejected, that injunctive relief was unauthorized because the defendant had discretion to award the 70 percent pension. For the rest, the argument that the trial court failed to re-

---

[5] At oral argument, counsel for the defendant advised the court that the board has since recalculated Howell's pension based upon his thirty-one years of service at the time of retirement at 62 percent of pay.

quire the plaintiffs to meet their evidentiary burden of proving irreparable harm comes too late. The record discloses that no issue with regard to irreparable harm was raised either during the hearing before the trial court or in the defendant's motion to reargue and set aside the judgment. Even if we were to consider this claim despite its lack of timeliness, we would be hard pressed to find error in the trial court's conclusion that those who have an interest in a pension fund are necessarily irreparably damaged by improper disbursements of fund assets. "Whether damages are to be viewed by a court of equity as 'irreparable' or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." *Robertson* v. *Lewie,* 77 Conn. 345, 346, 59 A. 409 (1904).

There is no error.

In this opinion HEALEY, PARSKEY and BIELUCH, Js., concurred.

GRILLO, J. (dissenting). Respectfully, I dissent. I am unable to agree, for the reasons delineated below, with the majority's construction of the ordinance at issue.

My principal disagreement with the majority opinion centers upon the "not less than one-half" phrase. In the majority's view, this phrase, reading the ordinance as a whole, authorizes "a payment of a pension beyond the amount of 50 percent of a retiree's annual salary only when an additional pension is earned by additional years of service." I cannot agree.

It is a settled principle of statutory construction "that '[n]o word in a statute should be treated as superfluous, void or insignificant unless there are impelling reasons . . . why this principle cannot be followed.' *Levin-Townsend Computer Corporation* v. *Hartford,* [166

Conn. 405, 409, 349 A.2d 853 (1974)]." (Citations omitted.) *State* v. *Burney,* 189 Conn. 321, 327, 455 A.2d 1335 (1983). "There is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment so that in construing it no part is to be treated as insignificant and unnecessary." *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980). In its construction of § 5 (a), the majority effectively reads the "not less than" phrase out of the ordinance by rendering it superfluous and of no force.[1]

Moreover, although it is true that ambiguous phrases should not be considered in isolation but in the context of the statute as a whole; *Mitchell* v. *King,* 169 Conn. 140, 144, 363 A.2d 68 (1975); I discern nothing in the language of § 5 (a) which justifies the conclusion that "not less than one-half" means *exactly* one-half. Indeed, in my view, the construction of "not less than one-half" according to its "commonly accepted meaning"; *State* v. *Burney,* supra, 326; General Statutes § 1-1 (a); compels the conclusion that while the pension awarded *must* be one-half of the preretirement salary, it *may* be higher. There is ample support for the proposition that the phrases "at least" or "not less than," while mandating a minimum, do not establish a maximum as well. See, e.g., *Turley* v. *Bolin,* 27 Ariz. App. 345, 348–50, 554 P.2d 1288 (1976)

---

[1] This omission of the phrase "not less than" takes on added significance when the legislative history of the ordinance is considered. As the majority opinion reveals, the first special act concerning fire department pensions provided simply a pension "equal to one-half of his regular monthly pay." The act was subsequently amended to provide a pension "of at least one-half of his annual salary," which the majority concedes is the functional equivalent of the present "not less than one-half" statutory language. Although the legislative history fails to provide insight as to the reason for the subsequent inclusion of "at least," "amendments carry with them a presumption that they are effecting a change in the existing law." *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 21 n.6, 434 A.2d 293 (1980).

(the phrase petitions "shall be filed . . . not less than four months preceding the date of election" reserves a minimum filing deadline and implies the right to file at any time prior to four months); *Peters* v. *Fenner,* 294 Minn. 488, 489, 199 N.W.2d 795 (1972) (where contract contained language requiring buyer to make monthly payments of "not less than $223.84," "not less than" confers on purchaser an unqualified right to prepay entire amount in any month); *People* v. *Jackson,* 27 App. Div. 2d 943, 279 N.Y.S.2d 259 (1967) ("not less than" not to be construed as equivalent to "not more than").

I also cannot agree with the majority that such a construction of "not less than" would confer "unfettered" or "unlimited" discretion upon the board. In this regard it is helpful to note, first, the mandatory language contained within § 5 (a). The section provides that the board (1) *shall* pay retirees with at least twenty-five years of service an amount equal to not less than one-half of their preretirement salary; (2) *shall* pay such retirees an additional 2 percent of their salary for each year over twenty-five; (3) but in no event *shall* the pension awarded exceed 70 percent of an employee's preretirement salary.

We have consistently held that the use of the word "shall" in a statutory context ordinarily connotes a duty the character of which is mandatory and not permissive. *Burwell* v. *Board of Selectmen,* 178 Conn. 509, 517, 423 A.2d 156 (1979); *Morris* v. *Timenterial, Inc.,* 168 Conn. 41, 43, 357 A.2d 507 (1975). The board, therefore, *must* pay a twenty-five year retiree 50 percent of his salary, *must* provide an additional 2 percent for each year over twenty-five, and *must not* award a pension which exceeds 70 percent of the employee's salary. I do not read the majority opinion to hold otherwise.

In light of these mandatory directives, I cannot agree that § 5 (a) confers "unfettered" discretion upon the board. Under no circumstances may the board award a pension in any amount below 50 percent or above 70 percent of a retiree's salary. As a retiree's length of service extends beyond twenty-five years, the board's discretion becomes correspondingly narrower until it disappears altogether regarding employees with thirty-five or more years of full-time service. In the present case, for example, it cannot be disputed that pursuant to the mandatory provisions of § 5 (a), Chief Howell is entitled to a pension of 62 percent of his former salary. The degree of discretion vested in the board, therefore, is limited to 8 percent of that salary. If the "not less than" phrase is given its common and ordinary meaning consistent with the overall statutory scheme, the language confers upon the board the discretion to award that percentage of a retiree's preretirement salary, between a minimum of 50 percent and a maximum of 70 percent, which has not been provided for by the additional 2 percent for each year of full-time service over twenty-five years. Thus, if a retiree elects retirement after exactly twenty-five years, the ordinance vests in the defendant discretionary power to award any additional sum but only up to a maximum of 20 percent of the preretirement salary.

The majority asserts that even if it is assumed, arguendo, that the ordinance may reasonably be interpreted in this manner, it nevertheless interprets the position of the board, based on the record before us, as expressly disclaiming reliance on such a formula. According to the majority, the defendant's position, with which it disagrees, is simply that the board is vested with discretion, regardless of years of service beyond twenty-five years, to set the minimum pension award at any amount between 50 and 70 percent, inclusive.

Because of the mandatory "pension ladder" delineated within § 5 (a), as well as the mandate that a pension must not exceed 70 percent of salary, I agree that this is an erroneous interpretation of the statute, although I do not agree that this was in fact the position of the board.

A fair interpretation of the testimony elicited at trial rebuts the majority's conclusion that the board, by expressly disclaiming reliance on the 2 percent formula, construed its discretion as "unfettered" between a minimum of 50 percent and a maximum of 70 percent. Steven Alderman, a trustee of the defendant board and the only witness to testify at trial, commented at length concerning the criteria utilized by the board in arriving at the pension at issue. It is clear that the dominant consideration, in light of Chief Howell's employment history and service to the community, was to reward him with a pension at the same percentage of salary, 70 percent, as the previous fire chief. Alderman expressly acknowledged, however, that the board considered the years of service beyond the twenty-five year minimum,[2] as well as the language contained within the ordinance itself.[3] Although Alderman stated that the board did not follow the "two percent formula," a fair reading of this testimony is not that the board chose to eschew the clear mandatory language of § 5 (a), but that the board chose not to limit itself exclu-

---

[2] Alderman: "We took into consideration the part over 25 years, mainly the 6 percent, that we—the six years at 2 percent extra, but in reality, I think more than anything else, we took into consideration his service and what he had served."

[3] Alderman: "I think that we took into consideration what the prior Chief had done and the language of what we felt we could give Chief Howell, in the Home Rule Ordinance."

A reasonable interpretation of this statement is that the board considered what it had done for the prior chief, i.e., extra compensation for meritorious service, and then applied to that amount a sum in accordance with the precise arithmetical formula contained within the Home Rule Ordinance.

sively to the formula. Strict adherence to the "two percent formula" would limit Chief Howell's pension to 62 percent of his preretirement salary, and clearly, in light of his employment history, the board wished to award him the maximum amount permissible under the ordinance.[4]

To construe the board's position as authorizing it to award a pension in any amount between 50 and 70 percent, inclusive, *regardless* of years of service beyond twenty-five years, effectively labels the actions of the board as a deliberate flouting of the mandatory provisions of § 5 (a). It is unreasonable to conclude that pursuant to its efforts to award Chief Howell a 70 percent pension, the board eschewed the precise and mandatory power which allowed it to attain the 62 percent plateau without the exercise of discretion. Even if it is assumed that the evidence elicited at trial is equivocal concerning the exact method utilized by the board in arriving at the 70 percent figure, the construction of the board's position by the majority would seem to violate the principle that public officials, acting officially, are entitled to a presumption that they have properly and accurately performed their duty until the contrary appears. *State* v. *Ward,* 172 Conn. 163, 171, 374 A.2d 168 (1976); *Parham* v. *Warden,* 172 Conn. 126, 134, 374 A.2d 137 (1976).

Because of the construction given the board's position, the majority quite correctly concludes that where "the assertion of such discretionary authority conflicts with specific legislative mandates expressly providing

---

[4] Similarly, the trial court, in its memorandum of decision, relied on the board's failure to follow the statutory formula in declaring the pension awarded Chief Howell to be null and void. Here again, I interpret the board's action; see footnotes 2–3, supra; as a decision not to limit the award to the mandatory directives delineated within the ordinance so as to attain the maximum allowable pension consistent with the statutory scheme.

a different result, the purported exercise of discretion is invalid." The short answer to this principle, however, is that a construction of the board's position as delineated above, which gives full effect to all of the statutory provisions, does not conflict with specific legislative mandates.

It is true that § 5 (a) does not delineate specific standards for the board to apply in exercising its discretion under the ordinance. In light of the statutory scheme, however, which mandates a floor, a ceiling and a "pension ladder" based upon additional years of service, the ordinance " 'establish[es] primary standards' " and " 'lay[s] down an intelligible principle to which the administrative officer or body must conform.' " *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 149, 384 A.2d 337 (1977). "The duties of an administrative agency . . . necessarily include the right to exercise discretion . . . . In exercising that discretion, the factors to be taken into consideration 'are not mechanical or self-defining standards,' and, thus, wide areas of judgment are implied. Such discretion is the 'lifeblood' of the administrative process." (Citations omitted.) *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 442, 423 A.2d 87 (1979). Pension statutes have as their purpose "the promotion of the general welfare, and for that reason pension statutes are liberally construed to accomplish that objective." 3 Sands, Sutherland Statutory Construction (4th Ed.) § 71.09. "[W]here power over a particular subject matter has been delegated to a municipal corporation by the legislature, without any express limitations, the extent to which that power shall be exercised rests in the discretion of the municipal authorities, and as long as it is exercised in good faith and for a municipal purpose the courts have no ground upon which to interfere." 56 Am. Jur. 2d 286, Municipal Corporations

§ 227. Indeed, this court has previously sanctioned a legislative grant of discretion without any discernible standards other than "such sums" "at such times" that the board "may deem advisable." *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 426, 29 A.2d 452 (1942). Since this court has placed its imprimatur upon a delegation of discretion as unbridled as the phrase "may deem advisable," it is difficult to understand why the "not less than" phrase, tempered as it is by the mandatory limitations of § 5 (a), should fail because of inadequate standards.

Undoubtedly, circumstances may arise where an administrative body, in exercising its discretion, will abuse that discretion. This possibility, however, should not, ipso facto, eliminate that discretion. In the present case the board listed several factors relating to the nature and commitment of Chief Howell's service to the department as justification for exercising its discretion. "It is unrealistic to demand detailed standards which are impracticable." *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 679, 236 A.2d 917 (1967). The several criteria on which the board exercised its discretion in the present case clearly indicate the impracticability of limiting discretion to specific enumerated factors beyond the mandates of § 5 (a). The fact that this discretion could be abused is not a valid basis upon which to divest the board of such discretion. "In an appeal of this nature, it is neither our function nor that of the [trial court] to retry the case or to substitute our or its judgment for that of the defendant [board]." *Riley* v. *State Employees' Retirement Commission,* supra, 441. There are, however, recognized principles upon which a court may vacate an award entered pursuant to the exercise of discretion: a showing that the entity acted illegally, arbitrarily, or in abuse of the discretion vested upon it. Id., 444.

Finally, the majority has failed to consider adequately the practical construction previously placed upon a similar act (insofar as the present issue is concerned) with reference to the retirement of the former chief. It is clear that such previous action by the board is entitled to some consideration in our construction of "what the law is." *Wilson* v. *West Haven,* 142 Conn. 646, 657, 116 A.2d 420 (1955). Although the previous fire chief was retired under the provisions of a prior special act and not the home rule ordinance, it is undisputed that he received a pension at 70 percent of his preretirement salary. Because the first special act provided for retirement strictly at 50 percent of income, it is reasonable to infer that the prior chief could have received his pension only under the provisions of the 1967 special act, which contained the "at least" language, the mandatory pension ladder, and which the majority concedes is the functional equivalent to the present home rule ordinance.

The majority dismisses consideration of the prior practice because there were "few particulars" concerning the prior chief's service with the fire department, thereby implying that he may have served for thirty-five years or more and that therefore no discretion was involved in that award. A careful reading of Alderman's testimony, however, justifies the conclusion that both the prior chief, Johnson, and Chief Howell retired after thirty-one years of full-time employment with the fire department.[5] Therefore the board must have exercised discretion in retiring the previous chief at 70 percent of his preretirement salary.[6]

---

[5] Alderman: "So, we felt that in total, he [Chief Howell] should be treated the same as the previous chief, William Johnson. That he should also be retired at 70 percent, considering he had also worked for thirty-one years for the Department."

[6] Furthermore, it is noted that in argument, when inquiry was made concerning the proposition of *Wilson* v. *West Haven,* 142 Conn. 646, 657, 116

Although the record does not reveal a statement of purpose behind the promulgation of the present ordinance, it is a reasonable assumption that its purpose is to encourage the continuation in service of experienced, dedicated personnel and to reward yeoman service via a discretionary additional sum. By its judicial excision of the "not less than" provision of the ordinance, the majority has effectively thwarted the board in its attempt to fulfill that purpose.

I would find error in the trial court's judgment and remand the case with direction to render judgment for the defendant.

A.2d 420 (1955), delineated above, counsel for the plaintiff, while not disputing that proposition, sought to distinguish the award to the former chief because that pension was awarded under the terms of a prior statute. This argument, however, is effectively rebutted by the fact that only the 1967 act authorized a pension beyond 50 percent of salary, and is, as the majority concedes, the functional equivalent of the present ordinance.