ANDREW MURRAY ET AL. *v.* MARGARET C. EGAN ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 120167
AT NEW HAVEN

Memorandum filed May 26, 1969

*Wiggin & Dana,* of New Haven, for the plaintiffs.

*Robert Kapusta,* city attorney, and *John J. Coughlin,* assistant city attorney, for the defendants.

MEYERS, J.  Five taxpayers of the city of Milford have instituted an action in this court returnable on the first Tuesday of June, 1969, against officials of that city, including both of the registrars of voters, the city clerk, the members of the board of aldermen and the members of the board of finance.  In the cause, the plaintiffs seek to enjoin these defendants from any further action in connection with the holding of a special city election on an advisory referendum dealing with the determination of prevailing public sentiment, without obligation to be bound by a majority vote resulting, on whether

or not the board of education should enter, for the year 1969-1970, into a bussing contract presently known as "Project Concern."

On May 5, 1969, the defendant board of aldermen unanimously voted to direct the holding of a so-called advisory referendum on the proposed "Project Concern" program for the school year 1969-1970, at which contemplated election the question to be voted on would be as follows: "Are you in favor of the Board of Education entering into a busing contract presently known as Project Concern for the forthcoming year, 1969-1970?" The defendant board of aldermen approved the transfer of $2500 to the election account of the city to cover costs for such an election and ordered the city clerk to publish a warning of the referendum. The defendant board of finance voted to authorize the transfer of the funds as approved by the defendant board of aldermen to the election account.

On July 2, 1968, the board of education of the city of Milford, after holding a public hearing thereon, voted to enter into an agreement for a "Project Concern" program with the board of education of the city of New Haven, whereby disadvantaged children of the city of New Haven would attend classes in schools of the city of Milford. Thereafter, a written agreement was entered into between the boards of education, pursuant to § 10-266j of the General Statutes, covering the academic year 1968-1969. Presently, in effect, the defendant board of education is considering a new contract or an extension of the present agreement, under that statutory enactment, with the board of education of the city of New Haven for a "Project Concern" program for the academic year 1969-1970. This is the concern of the board of education alone. The legality of the

proposed referendum is the concern of this court, as is also the plaintiffs' right to enjoin any action connected with such submission.

In accordance with a rule to show cause issued on May 16, 1969, the parties and their counsel appeared before the undersigned in New Haven at 10 a.m. on May 22, 1969, at which time a full hearing was held on the plaintiffs' request for the issuance of a temporary injunction against these defendants; the request was, in turn, resisted by the defendants. Briefs, which have been helpful, were filed thereafter.

The issue here does not involve the worth, virtue or advisability of, or the absence of any of these or other qualifications of, "Project Concern" or contemplated arrangements therewith. The determination required to be made by the board of education itself might include, in some substantial measure, consideration of the humanitarian aspects of the proposal and the availability to the board of facilities and staff in Milford, as well as its exercise of reason and judgment. Action by the board as required is purely administrative and, further, permits no extraneous delegation or direction other than that provided in law as an aid by which to learn further of the feeling of the public on any question before the board of education. Public hearings by the board of education have been provided for by statute. General Statutes § 10-238.[1] So is provided a way by which to guard against, by

[1] "Sec. 10-238.  PETITION FOR HEARING BY BOARD OF EDUCATION. The board of education of any municipality, upon written petition signed by one per cent of the electors of such municipality or fifty such electors, whichever is greater, the signatures thereon to be verified by the clerk of the municipality, shall hold a public hearing on any question specified in such petition. Such hearing shall be held at a time and place to be designated by such board, not later than three weeks after receipt by the board of such petition."

public participation and the identified voice of individuals and groups, "the threatened deprivation [of] . . . the right to express their opinion and make their views known," as spoken of in the defendants' brief.

The board of education of Milford enjoys no powers other than those which are provided for it and which are designed either to alleviate its own task or to influence the exercise of its own discretion in connection with the making of a decision on the question of contracting with the board of education of New Haven as to the bussing of pupils in "Project Concern." General Statutes §§ 10-220— 10-239. This action on its part, as has been indicated, is purely administrative. It is well-established law that a board of education is but an agency of the state, in charge of education in the given town or city of its dominion, and that the board possesses only such powers as are granted to it by statute expressly or by necessary implication. *Herzig* v. *Board of Education,* 152 Conn. 144; *Old Colony Gardens, Inc.* v. *Stamford,* 147 Conn. 60, 62. Power by necessary implication, though possible in law, does not in this instance exist. Strict interpretations have been made in our precedents as regards this potential. It has been held that a municipality, being a creature of the state, is able to exercise no powers other than those which are specifically granted it or "are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *Bredice* v. *Norwalk,* 152 Conn. 287, 292. It cannot here be held that the ability to carry on as to the instant proposal is commanded by any implied powers. Further, in fulfilling its duties as such, a town or city board of education is acting in a governmental and not in a proprietary capacity. *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 276.

This court cannot agree with the contention of the defense that the plaintiffs have no standing, that no irreparable harm has been demonstrated and, further, that even if the latter had been established, "the additional burden . . . upon plaintiffs would probably be the paltry sum of a few cents, an injury trifling and insignificant." Our Supreme Court has held: "An injury is irreparable when there is no legal remedy furnishing full compensation or adequate redress because of the ineffectiveness of such legal remedy, or when, owing to the delay incident to the prosecution of an action at law to final judgment and obtaining execution thereon, such judgment and process would be fruitless of beneficial results." *Gorham* v. *New Haven,* 82 Conn. 153, 157. "Irreparable" connotes the inability to make good, to repair, to retrieve or to atone for. To seek a determination as to the propriety of the action complained of, after the fact, or to contemplate the institution of an action to recover for Milford the price of the proposed special election, would scarcely suffice for the wrong done in exercising powers by them which these defendants do not have at all. The case of *Theurkauf* v. *Miller,* 153 Conn. 159, involving an illegal referendum in the town of Glastonbury, is clearly distinguishable from the instant cause. It is evident that the referendum in the cited case was provided for by the statute there pertinent, General Statutes § 7-147m. In the instant cause, of course, no such referendum as ordered or seemingly in process of preparation by the combined efforts of these defendants is provided for either in our statutes or the charter of the city of Milford.

When a question such as this, whether or not the contract for bussing should be entered into, presents itself, and no provision exists for its submission to referendum, the expense of submitting it to the

voters, even on a "straw vote" basis, as here, would constitute a misapplication and waste of public funds. In such matters as this, taxpayers are not to be denied their rights of guardianship and access to equity to prevent such unlawful or improper acts. 4 Yokley, Municipal Corporations §§ 605, 606, with citations therein; 52 Am. Jur., Taxpayers' Actions, § 15.

It is further observed that the reasoning of a court of equity in enjoining that which it determines to be a misapplication of municipal funds, that is, the applying of such funds to municipal purposes not designated or empowered by law, rests on at least two grounds. The first of these is the ultra vires character of the contemplated action and the second is the trust relationship which every single taxpayer holds to municipal authorities with respect to public funds committed to them. More simply stated, municipal taxpayers, actually the equity owners of municipal funds with public authorities as but trustees thereof who can but hold and apply money to the legitimate purposes of the trust, may seek to enjoin those trustees from misapplying those funds. *Litz* v. *West Hammond,* 230 Ill. 310, 315; 18 McQuillin, Municipal Corporations (3d Ed. Rev.) § 52.29. These plaintiffs have standing before the court. *Bassett* v. *Desmond,* 140 Conn. 426, 430, 432.

To hold such an election as is contemplated here by these defendants and complained of by these plaintiffs would be, in the opinion of this court, contrary to law, would constitute an unlawful allocation and expenditure of the public funds of Milford, and should be temporarily enjoined as requested by the plaintiffs herein.

[Order of temporary injunction omitted.]