[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The plaintiff and the defendant were legally married on December 25, 1989, in East Haven, Connecticut.
The defendant is an attorney-at-law and was admitted to practice in the State of New York. The parties met sometime in 1988 when the defendant, while employed with legal aide, became the lawyer for the plaintiff on his involuntary commitment to Bellevue Hospital. This was at the time when Mayor Koch (the then mayor of New York City) caused the so-called "street people" to be picked up and placed in the New York City hospitals. The defendant won the plaintiff's release at a hearing in the Superior Court for the County of New York in August 1988. The plaintiff, unaware of the court's order, believed that he "escaped" from Bellevue Hospital and came to Connecticut to stay with the defendant. In February 1989 the parties purchased a condominium at Trolley Crossing Condominium in East Haven for $141,650. The parties obtained a mortgage from Security Pacific National Bank for $100,000 which is currently in foreclosure. See Security Pacific National Bank v. Joanne M. Sardone and John Gregor, Superior Court, Judicial District of New Haven, Docket #CV 92-0328663.
On August 9, 1988, Judge Bruce Wright, sitting in the Superior Court for the County of New York, found that the plaintiff was not mentally ill. He is 45 years of age. He has a Ph.D. in physics and was first in his class at Columbia University. Until 1982 he was employed by Computer Services Corporation at the Goddard Space Center. In March 1982 he suffered psychiatric disability and depression. Six months later he received Social Security disability and has been receiving social security disability ever since. He is at present under psychiatric treatment and is on lithium and an anti-depressant drug called zoloft.
As previously stated, the defendant is a lawyer and member of the bar of the State of New York. Once the parties started living together the defendant's practice of law "pretty much stopped." She and the plaintiff started delivering newspapers for the New Haven Register and continued this work for some period of time. The defendant also is on disability. As a child CT Page 7413 she had osteomyelitis. She presently has much trouble with her back. She has what she describes as neurological difficulties. In March 1992 she was hospitalized and was in traction. She is receiving disability payments from Cigna of $4000 per month. (See plaintiff's exhibit C). She goes to Gaylord for physical therapy twice a week.
The parties lived together until April 15, 1991, when the plaintiff left the marital home. It is the plaintiff's claim that "things had gotten very bad between us" and that he would have a nervous breakdown if he stayed any longer. The plaintiff had started taking lithium just prior to leaving. The defendant did not like this, did not believe the plaintiff needed lithium and found that it made him violent and very hostile.
The defendant disputes that the marriage has broken down. First she claims that the plaintiff, by reason of his mind-altering drugs, is incapable of stating whether the marriage is irretrievably broken down. Secondly, she claims that if, in fact, any true marriage ever existed, she denies that it has broken down. Finally, the plaintiff claims that if, in fact, the marriage did exist, it should be annulled because of the plaintiff's concealment of his misdiagnosis as manic-depressive, so that the marriage is voidable. (See the defendant's Fourth Counterclaim For Annulment).
The defendant has a pending lawsuit against the City of New York. This lawsuit is referred to in paragraph 6 of her affidavit in support of protective order, being exhibit A to her affidavit in opposition to Attorney Flamm's motion to withdraw, referred to again in paragraphs 13, 16 and 19 and in defendant's exhibit 3. Defendant's exhibit 3 is also another claim of the defendant's against the City of New York. On June 4, 1992, she filed her Supplemental Annulment Counterclaim and Proposed Order. Attached is a Supplemental Affidavit and statement of intention to sue non-parties in further proceedings. In that affidavit she has indicated her intention to file a disciplinary complaint against plaintiff's counsel, a complaint against the plaintiff; the plaintiff's father and Dr. O. Quentin Hyder, plaintiff's doctor. (See exhibit C to defendant's Supplemental Annulment Counterclaim and Proposed Order.)
As previously noted, the parties in 1989, purchased a condominium in East Haven. The difference between the mortgage and the money necessary to close was $43,000, which came from the plaintiff's savings. The plaintiff seeks to be freed of the condominium and is not looking for recoupment of his investment. The defendant is seeking $20,000 by way of reimbursement for her care of the plaintiff while they lived together. CT Page 7414
As to defendant's defense that the marriage has not broker down irretrievably, the following language of the Appellate Court in the case of Eversman v. Eversman, 4 Conn. App. 611, 613-614
(1985), sets forth the law of this case on this issue:
 The term "irretrievably" is not defined in our statutes. In upholding the constitutionality of General Statutes (Rev. to 1977) 46-32 (now 46b-40), insofar as it authorizes a dissolution of marriage upon a finding of irretrievable breakdown, our Supreme Court, in Joy v. Joy, 178 Conn. 254, 423 A.2d 895 (1979), made the following relevant observation: "Despite the defendant's claims to the contrary, the evidence amply supports the trial court's factual finding of irretrievable breakdown. We decline. . . to circumscribe this delicate process of fact-finding by imposing the constraint of guidelines on an inquiry that is necessarily individualized and particularized. `Since it is the marriage as a whole which is at issue, any evidence which bears upon the viability of the marriage is admissible, whether it be classified as objective or subjective.'" (Citations omitted.) Id., 255.
 The determination of whether a breakdown of a marriage is irretrievable is a question of fact to be determined by the trial court. Id., 255-256; Flora v. Flora, 337 N.E.2d 846, 850 N.2 (Ind.App. 1975); Woodruff v. Woodruff, 114 N.H. 365, 367, 320 A.2d 661 (1974). . . .
As further noted in the Eversman decision at page 614, "The fact that the defendant maintains hope for reconciliation will not support a finding that there are prospects for a reconciliation."
Helpful, also, as a matter of law on this issue, is the statement by our Supreme Court in the case of Hardisty v. Hardisty, "We have come to accept the unfortunate reality that marital relationships sometimes break down irretrievably without fault due to the emergence of irreconcilable differences between the marital partners." Hardisty v. Hardisty, 182 Conn. 253, 265
(1981). CT Page 7415
The plaintiff testified the defendant threw things at him, that it was impossible for the parties to get along, that they didn't see "eye to eye", that he never wanted children and that she wanted to adopt children and that she made it so he couldn't stand being with her anymore. While the plaintiff's testimony regarding the breakdown of the marriage is corroborated in some respects by the defendant and denied by the defendant in other respects, there is sufficient evidence for the court to conclude that the marriage has broken down irretrievably. It would appear from the defendant's testimony that the real problem was the plaintiff's taking lithium and the effects that the lithium had upon him.
The court, in view of the evidence in this regard, does not attribute fault to either party.
The defendant claims that a decree of annulment should enter rather than a decree of dissolution of marriage. "An annulment shall be granted if the marriage is void or voidable under the laws of this state or the state in which the marriage was performed." 46b-40(b) of the General Statutes. To be entitled to an annulment the person claiming such must allege and prove that the marriage is void or voidable. Durham v. Micelli,15 Conn. App. 96 (1988). It is the defendant's claim in her Fourth Counterclaim For Annulment that the plaintiff "concealed [his] continued consent to be misdiagnosed as manic-depressive as an accurate rather than [a] symptomatic diagnosis." The question is whether the existence or non-existence of the fact concealed or misrepresented operated, as between the parties, to prevent some essential purpose of the marriage and thus worked a practical destruction of their relationship. Gould v. Gould, 78 Conn. 242,261 (1905); Lyman v. Lyman, 90 Conn. 399, 402 (1916); see Fattebine v. Fattebine, 182 Conn. 433 (1981). The court finds first that there was no concealment, and finds, further, that even if there has been such concealment, that it did not prevent some essential purpose of the marriage. While the court recognizes that the defendant claims they could not have intercourse because of the lithium the plaintiff was taking and that they could not have children, she knew the defendant had had a vasectomy and knew or should have known that he did not want children. This, I'm afraid, was a dream of hers rather than a reality.
These are two rather complex individuals with emotional and psychological problems. Their marriage was a mistake from the beginning. Each should now be permitted to go his or her separate way without any entanglements with one another and with as little hurt as is possible under the circumstances. The defendant's income is nearly three times that of the plaintiff. CT Page 7416 Each party has some liquid cash to take care of his or her extraordinary expenses.
The court, in addition to the findings noted above, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The defendant has not pursued her first, second and third counterclaims for annulment.
5. The plaintiff has the capacity to state whether the marriage has broken down irretrievably.
6. There has been no concealment by the plaintiff at the time of the parties' marriage as claimed by the defendant in her fourth counterclaim for annulment.
7. There has been insufficient evidence that the marriage is void or voidable.
8. Based upon all the evidence, the marriage of the parties has broken down irretrievably.
9. Fault for the breakdown is not attributable to either party.
In determining the proper orders in this case, the court must consider the factors set forth in 46b-81 and 46b-82 of the General Statutes. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory CT Page 7417 criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and source of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992):
 "General Statutes 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, Cert. denied 207 Conn. 806, 540 A.2d 374 (1988). . . .
 The statutory factors determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81(c)."
The court has considered all of the criteria of 46b-81 and46b-82 of the General Statutes, together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,182 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide CT Page 7418 the parties' property in a dissolution proceeding. Leo v. Leo,197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-314
(1991).
The court enters the following orders:
1. The first, second, third and fourth counterclaims for annulment are dismissed.
2. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
3. There shall be no alimony to either of the parties.
4. The plaintiff shall quitclaim all of his right, title and interest in and to the real property known as Unit 207, Trolley Crossing, 173 Russo Avenue, East Haven, Connecticut, to the defendant and shall release the previously recorded lis pendens against the property. The defendant shall indemnify and hold harmless the plaintiff from any claims or demands upon the existing mortgage with Security Pacific National Bank, condominium fees, taxes, insurance, utility charges and all other charges or costs incident to ownership or residence in the property.
5. The defendant shall be responsible for the mortgage, taxes, condominium fees, utilities and any other payments incident to ownership of the condominium from April 15, 1991, to the date hereof including attorneys' fees, appraiser fees, and all costs in connection with the pending foreclosure proceedings.
6. The plaintiff shall be entitled to recover his personal property at 173 Russo Avenue, East Haven, consisting of a rug, bolalaika, his eye glasses and certain boxes of personal items. Except as herein set forth, the remaining tangible personal property at 173 Russo Avenue, Unit 207, shall be the property of the defendant free of any claim or demand by the plaintiff. The tangible personal property at the plaintiff's apartment in New York City shall be his free of any claim or demand by the defendant.
7. Those other assets listed in the plaintiff's financial affidavit shall be his free of any claim or demand by the defendant.
8. Those other assets listed in the defendant's financial affidavit shall be hers free of any claim or demand by the plaintiff. CT Page 7419
9. Except as hereinbefore provided, each party shall pay his or her own liabilities.
10. Each party shall pay his or her own attorney's fees and expenses in connection with this proceeding.
11. The defendant's request for a restraining order is denied.
12. The defendant shall be entitled to resume her former name of Joanne Kamerling.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE