[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MARCH 10, 1997
The major issue in this contested dissolution case is the authority of the Superior Court in a final decree to order a standing permanent restraining order.
The plaintiff wife and the defendant husband were married in Norwalk, Connecticut on July 22, 1994. The parties have satisfied the residency requirements. There were no minor children issue of the marriage. The evidence clearly indicates that the marriage of the parties has broken down irretrievably.
The wife filed a pro se complaint dated June 26, 1996 seeking a decree dissolving the marriage. Both parties are employed. Their financial circumstances are similar. The parties have been living separate and apart since December of 1995. There were a number of trial separations prior to that date. Having heard the evidence, the court finds that the marriage of the parties has broken down irretrievably and a decree dissolving the marriage will enter accordingly.
The husband appearing pro se filed a cross complaint dated October 26, 1996 seeking an annulment of the marriage. He has failed to prove the statutory requirements of annulment. C.G.S.§ 46b-40 (b); C.G.S. § 46b-48. He equally failed to prove the common law grounds for annulment. Therefore, the court denies the husband's cross complaint seeking an annulment. Fattibene v.Fattibene, 183 Conn. 434, 438-39 (1981); Durham v. Miceli,15 Conn. App. 96, 97 (1988); Gregor v. Kamerling, 7 CONN. L. RPTR. 741, 1992 Ct. Sup. 7411, 7 CSCR 1018, August 5, 1992 (Bassick, J.); Phillips v. Dame, 4 CONN. L. RPTR. 650, 1991 Ct. Sup. 6638,6 CSCR 718, July 11, 1991 (Mihalakos, J.); Sinojia v. Sinojia, 12 CONN. L. RPTR. 483, 1994 Ct. Sup. 8811-D, 9 CLR 1115, September 27, 1994 (Harrigan, J.); Hardy v. Hardy, 1995 Ct. Sup. 12572-Z, November 7, 1995 (Klaczak, J.).
The principal issue of this case has to do with the wife's request for a permanent restraining order. The court finds the following facts. The husband has been under psychiatric care for some period of time and is currently taking medication. The husband has engaged in threatening and bizarre actions toward the CT Page 2222 wife. In February 1995, the wife came home and shortly after her arrival the police arrived with guns drawn, saying "Drop the weapon." The wife had no weapon. The husband had called the police falsely complaining that it was her intention to kill him. As a result of this incident the husband was arrested. The wife obtained her first order of protection from the Superior Court at the arraignment.
The parties later attempted to reconcile based upon the promises of the defendant that he would no commit any such acts. The violent and bizarre acts continued. On December 19, 1995, the husband had an ex parte restraining order served on the wife, requiring the wife to immediately vacate the marital home. She packed up her clothes, took her personal property and vacated the house. She never returned to live with the husband. Fourteen days later, the parties went to court and the husband withdrew the restraining order.
The husband has been arrested on three separate occasions for his violent, threatening and bizarre behavior. On each occasion the Superior Court at the criminal arraignment entered restraining orders in favor of the wife.
On June 26, 1996 the plaintiff applied for a civil restraining order against the defendant in accordance with C.G.S.§ 46b-15, bearing docket number FA96-0153016. The ex parte restraining order was granted. On July 10, 1996 the wife's restraining order was extended for 90 days.
In the meantime the husband had resolved his criminal matters. He was convicted of a number of criminal charges for which the wife had him arrested. As a result of these convictions he was placed on probation. The conditions of probation included a standard restraining order as per C.G.S. § 46b-15(b)(1), (2) and (3). The probation conditions will terminate January of 1998. After that date there will be no restraining order, either civil or criminal, in effect.
The husband expressed unusual and bizarre behavior during the trial. He represented himself pro se. The wife testified that she was still in fear of him. She feared that there would be personal violence to her after the restraining order ceased in January 1998. The court found her testimony credible. She expressed visible signs of fear at trial. CT Page 2223
The court, after considering the standards of C.G.S. §46b-81 and § 46b-82 enters the following orders: The court finds that the allegations of the plaintiff's amended complaint has been proven and that the marriage of the parties has broken down irretrievably. In addition to a decree dissolving the marriage, the court enters the following orders: 1) each party is to pay for and hold the other party harmless from all debts listed in their respective financial affidavits on file with this court, 2) each of the parties is to keep the personal property that they currently possess free and clear of any claims by the other party, 3) no order of periodic alimony is awarded to either party and 4) the wife is to pay her own attorneys fees.
PERMANENT RESTRAINING ORDER
This court believes that there are four authorities for the court to entertain a permanent restraining order based upon the facts and circumstances of this case: 1) Public Act 96-228, 2)C.G.S. § 46b-15, 3) C.G.S. § 52-471 and 4) the inherent supervisory authority of the Superior Court.
In 1996, the legislature provided for sanding criminal restraining orders issued on a permanent basis on the following standards: "If the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal restraining order will best serve the interest of the victim and the public, issue a standing criminal restraining order which shall remain in effect until modified or revoked by the court for good cause shown." P.A. 96-228, Section 1(a). The predicate underlying the issuance of such a permanent order is that the person must be convicted of either a felony assault or felony sexual assault. This court finds that the history and character as well as the nature and circumstances of the defendant's conduct are such that a standing restraining order should be ordered. The evidence falls short of demonstrating that the defendant has been convicted of the underlying predicate felonies. Furthermore, this court is not sitting as a sentencing judge in a criminal matter. Therefore, this court does not believe it has statutory authority to enter such a standing restraining order. This court feels that the legislature, in enacting P.A. 96-228, gave clear guidance to judges of the Superior Court as to the public policy it wished to implement. This court believes that three other tools exist to implement this 1996 legislative public policy. CT Page 2224
The authority for the entry of a civil restraining order isC.G.S. § 46b-15. "The court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant and such dependent children or other persons as the court sees fit." C.G.S. § 46b-15(b). No order of the court shall exceed six months, except that an order may be extended by the court upon motion of the applicant for such additional time as the court deems necessary." C.G.S. § 46b-15(d). The court, therefore, believes that the legislature, when it passed P.A.96-228, was cognizant of the recommended time limitations set forth in C.G.S. § 46b-15. It must have been cognizant, that although there was a recommended statutory limit of six months and that most orders are extended for only six months, the statute allowed a court to extend civil restraining orders beyond six months "as the court deems necessary." This court believes that the legislative intent of C.G.S. § 46b-15(d) is sufficient authority for the court to enter a permanent civil restraining order.
The Superior Court has the authority to enter permanent injunctions. C.G.S. § 52-471. Injunctions may be entered in all forms of civil actions including family matters. Mafera v.Polek 15 Conn. Sup. 132 (1947); Yontef v. Yontef, 185 Conn., 275,289 (1981).
In general, for a plaintiff to prevail in an injunction action the plaintiff must show (1) the there is no adequate remedy at law and (2) the plaintiff would be subject to imminent and irreparable damage. Pet v. Department of Health Services,207 Conn. 346, 370, (1988). An injunction lies within the sound discretion of the court. In exercising this discretion the trial court must balance the competing interests of the parties. Further, the relief granted must be compatible with the equities of the case so as not to be "greatly disproportionate to the injury of which the plaintiff complains." Dukes v. Durante,192 Conn. 207, 225 (1984).
For a legal remedy to be adequate, it must be "specific and adapted to securing the relief conveniently, effectively and completely." Burchett v. Roncari, 181 Conn. 125, 129 (1980). The court finds in this case, that there is no adequate remedy under the Burchett test.
Irreparable connotes the inability to make good or to CT Page 2225 restore. Murray v. Egan, 28 Conn. Sup. 204, 208 (1969). Thus, irreparable harm arises when there exists no legal remedy furnishing full compensation or adequate redress for a wrong done to or sustained by an individual. The injury or wrong complained of must be serious or material and not adequately reparable by damages at law in that, such damages will not restore the complaining party to the position in which the party formerly stood. City of New London v. Perkins, 87 Conn. 229, 234 (1913);Gorham v. The City of New Haven, 82 Conn. 153, 157 (1909). "Whether damages are to be viewed by a court at equity as `irreparable' or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." Patry v. Board of Trustees, 190 Conn. 460,472 (1983).
There must also exist a real or immediate threat that the plaintiff will be wronged, that is, a substantial likelihood of immediate, irreparable injury. It is also clear that past conduct may be considered in determining at the time of trial the probability of future conduct warranting injunctive relief.Labbadia v. Bailey, 152 Conn. 187, 192 (1964). The court finds in this case that the plaintiff would be subject to imminent and irreparable injury under the Gorham test.
Such an injunction was ordered in a post judgment dissolution matter between a former husband and wife. The injunction was made permanent even though C.G.S. § 46b-15 remedies were available. Using the well recognized statutory and common law injunction powers, a permanent injunction was ordered in that case. Ferris v. Clark, 12 CONN. L. RPTR. 223, 1994 Ct. Sup. 7432, July 18, 1994 (Karazin, J). The defendant's appeal was denied per curiam by the Appellate Court. Ferris v. Clark, 44 Conn. App. 902
(1997). The Appellate Court denied reargument and reargument en banc on February 11, 1997. Ferris v. Clark, A.C. 14312, February 11, 1997.
Lastly, the court has inherent powers to enter appropriate orders in family cases. "Because every family situation is unique, the trial court drafting a dissolution decree has wide discretion to make suitable orders to fit the circumstances."Passamano v. Passamano, 228 Conn. 85, 91 (1993). The court has inherent equitable powers in family matters to enter orders protecting the welfare of the parties. LaCroix v. LaCroix,189 Conn. 685, 689 n5 (1983); Pasquariello v. Pasquariello,168 Conn. 579, 586 (1975); Stoner v. Stoner, 163 Conn. 345, 356 (1972); CT Page 2226Krasnow v. Krasnow, 140 Conn. 254, 261 (1955).
The plaintiff's claims for relief state, "such other relief as the court deems appropriate." this request is sufficiently broad for the trial court to enter a lump sum award despite the fact that the claim for relief did no contain such a request nor recite the statutory authority for the property order. Lord v.Lord, 44 Conn. App. 370, 373 (1997).
 "We have often stated that the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. Tessitore v. Tessitore, 31 Conn. App. 40, 45, 623 A.2d 496 (1993). These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute. Sands v. Sands, 188 Conn. 98, 105, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S.Ct. 792, 74 L.Ed.2d 997 (1983)." Lord v. Lord, supra 374.
This court, for the four reasons stated above, has the authority to order a permanent restraining order in this dissolution matter under the facts found.
The court enters the following restraining orders:
The defendant, Thomas X. Farmer, is restrained from
 1) imposing any restraint upon the person or liberty of Lora G. Allshouse;
 2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking Lora G. Allshouse or
 3) entering the family dwelling or the dwelling of Lora G. Allshouse.
 This order shall remain in effect until modified or revoked by the court for good cause shown.
The order is made effective February 27, 1997.
The defendant was notified by this court on the record on February 27, 1997 of this order. in accordance with section 1 of Public Act 96-228 the defendant was advised on the record that a CT Page 2227 violation of a standing criminal restraining order issued by the court pursuant to subsection (a) of this section shall be punishable by a term of imprisonment of not less than one year nor more than five years, a fine of not more than five thousand dollars or both. Furthermore, the court on the record advised the defendant in accordance with section 53a-107, entering or remaining in a building or other premises in violation of this order constitutes criminal trespass in the first degree. This is a criminal offense punishable by a term of imprisonment of not more than one year, a fine of not more than two thousand dollars or both.
The clerk was instructed to serve a certified copy of this order upon the defendant as well as upon the police departments of Stamford, CT, Norwalk, CT and Bridgeport, CT within forty-eight hours of its February 27, 1997 issuance.
This decision was rendered from the bench in open court on February 27, 1997 and thus is effective February 27, 1997.
TIERNEY, J.