[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on a pleading entitled "Application for Order to Proceed with Arbitration" filed by the Metropolitan District Commission (the "District") to proceed with arbitration pursuant to General Statutes § 52-410. The application seeks an order of this court directing the Connecticut Resource Recovery Authority (the "Authority") to proceed with arbitration with the District. It further seeks either an injunction or an order enforcing an arbitration award directing the Authority to cease interfering with the District's CT Page 13998 operation and transportation of material to and from the Torrington Transfer Station.
Subsequent to the hearing on its application, the District filed a memorandum of law dated July 31, 2001, modifying its prayer for relief. The modified prayer for relief requests first that the court order the Authority to arbitrate the contractual dispute between them before a new arbitration panel. The Authority has already agreed to do this by naming its party-appointed arbitrator and therefore, the only issue before the court is the plaintiff's motion for an injunction.
The following facts were established by the testimony and the exhibits entered into evidence at the hearing on the application to compel arbitration. In 1984, the District and the Authority entered into a twenty-seven-year contract (herein the "Agreement"). Pursuant to the Agreement, the District agreed to operate certain Authority-owned facilities, including the Torrington Transfer Station, and to provide certain other services, including transportation services to and from the Torrington Transfer Station. In 1999, a dispute arose between the parties. The Authority issued three requests for proposal soliciting proposals from third parties to perform all of the services performed by the District under the Agreement. The District objected, asserting that Article VI Section 3 of the Agreement entitled ""Replacement Workers or Contractor" did not permit the Authority to totally replace the District. Pursuant to the Agreement, the parties submitted the dispute to arbitration. Each party appointed a party-arbitrator and a neutral arbitrator was chosen, establishing an arbitration panel of three individuals. The District appointed Attorney Shipman and the Authority appointed Attorney Noun. Magistrate Judge Egan was the neutral arbitrator (collectively, the arbitrators are referred to herein as the "Panel"). The Panel was asked to determine the "rights of the Authority to hire replacement workers under Article VI Section 3 of the contract." (Exhibit 12, p. 1.). The Panel ruled that "a bonafide, unilateral finding by the Authority that the District's workers are not satisfactorily performing, can under the appropriate circumstances and the further requirements of this decision serve as [the] grounds to replace a `program,' provided the grounds are bonafide and any claimed deficiency in performance is sufficiently substantial." Id, p. 8. The Panel noted that the Authority was required to give notice of the bona fide reasons for the replacement. Id. The replacement worker section states that "the Authority may, "upon reasonable notice," order the District to stop performing such program and hire others to perform such program . . ." (Exhibit A, p. 26.)
The Panel ruled that it "believes generally that 30 days notice is appropriate, although circumstances may dictate that the period be longer CT Page 13999 or shorter in particular replacements." (Emphasis added.) (Exhibit 12, p. 10 n. 2.)
The Panel conceded that the parties' submission did not encompass all disputes concerning the interpretation of the replacement worker provisions of the Agreement. It did not expressly reserve jurisdiction over replacement worker issues, although it did expressly reserve jurisdiction over another matter before it, i.e., direct cost issues. (Exhibit 12, p. 14.). In addition, upon the informal inquiry of both of the parties, about another situation implicating the Authority's rights under the Agreement to replace District workers, the Panel gave a preliminary interpretation of the replacement worker provisions based on the facts informally presented, but declined to rule on that dispute, stating that "[t]he [P]anel if requested will hear evidence and determine the issue under the agreement." (Exhibit 12, p. 12.) Finally, Attorney Shipman testified that the issue of replacing workers at the Torrington Transfer Station would have to be decided by another arbitration panel.
After the Panel rendered its decision, Attorney Nolin wrote Judge Magistrate Egan, Attorney Shipman and the Authority a letter stating, that he had a conflict of interest, suggesting but not explicitly stating that he was resigning from the Panel. No action was taken in response to that letter. The American Arbitration Association was not notified, no vacancy was declared and no replacement panelist was named.
Subsequently on July 10, 2001, at 2: 13 p.m., the Authority gave the District written notice that later that day it intended to replace the District's workers at the Torrington Transfer Station at 12: 01 a.m. July 11, 2000, less than ten hours after it gave notice to the District. (Exhibit 12, tabs D and E.) The Authority stated that it would reimburse the District for the replaced workers' regular time wages if the District was unable to "establish that it was unable to use those workers elsewhere." Id.
That afternoon, the District's attorney, Attorney Spellacy, called the Magistrate Judge Egan seeking intervention by the Panel. Egan contacted Shipman and although he attempted to contact Nolin, he was unable to reach Nolin who was out of the country. Egan instructed Attorney Spellacy to contact the attorney for the Authority, Attorney Bright, and to tell Attorney Bright to call Egan. When Bright complied. Egan asked Bright to attend a meeting the following morning to discuss the proposed replacements. Bright stated that he did not believe the Panel had jurisdiction over the matter, but agreed to appear as a professional courtesy and not as a submission to the Panel's jurisdiction. At the meeting, Egan and Shipman gathered information from Spellacy and Bright and later that day issued an interim order enjoining the Authority from CT Page 14000 replacing the District's workers at the Torrington Transfer Station pending a hearing before the Egan Panel to be scheduled within thirty days of the interim order. (Exhibit 12, tab F.) The order stated that the fewer than twelve hours notice given was "facially insufficient." Id.
The Authority's first argument against the enforcement of the interim order is that the interim order was not properly before the court. The Authority argues that to the extent the District is asking the court to enforce or confirm the "interim "order" of Egan and Shipman, it has not taken the necessary step to put the issue before the court. The Authority cites General Statutes § 42-417, which spells out the procedure by which a party may apply for an order confirming an award, and notes that the District has failed to file appropriate pleadings in accordance with that section. Thus, the Authority argues that the court should not entertain this issue. That is not the law of this state.
The failure to bring an action to confirm under General Statutes §52-419 and § 52-419 does not prevent the court from having jurisdiction as those provisions are not the exclusive "means of enforcing an arbitration award. They are merely an expeditious means of converting a contractual proceeding into a judgment for the purpose of enforcing the award. Spearhead Construction Corp. v. Bianco,39 Conn. App. 122, 665 A.2d 86 (1995). "In the absence of a motion to confirm, the parties are "left to their common law rights which were an action to enforce the award. . . . An arbitration award, confirmed or not has the preclusive effect regarding the issues of fact and law litigated before and determined by the arbitration panel." (Citations omitted.) Id., 132. In its motion to compel arbitration, the District asked the court to enforce either the interim order or the original order.
The Authority's second argument in opposition to the enforcement of the interim order is that the interim order is invalid because the Panel has rendered its award and its duties have concluded. The Authority citesHousing Authority v. Local 1303-260, Council 4, AFSCME, 56 Conn. App. 786,790, 746 A.2d 217 (2000), in support. In that case, the Appellate Court held that an arbitration award should be vacated because the issue decided by the panel was not submitted to it by the parties.
The Authority's position is well taken. It has long been the law in this state that when the submission to arbitration contemplates only a determination of rights under particular circumstances, it may not expand its authority to consider the rights of the parties under circumstances which are not yet in existence. Conn. Gen. Stat. § 52-418 (a)(4); see also Niles-Bement-Pond Co. v. Amalgamated Local, 405, 140 Conn. (1953). The question of whether the Authority could replace the workers at the Torrington Transfer plant on less than twelve hours notice was not CT Page 14001 submitted to the Panel. As stated above, the question submitted to the Panel was whether the Authority could replace all of the District workers under the replacement worker provision of the Agreement in the manner contemplated by the three requests for proposal. That question was raised in a particular factual context. The Panel expressly stated that it would only decide whether the replacement worker question prevented the Authority from replacing District employees under facts different from those submitted in the submission "if the parties requested, " implicitly acknowledging that it did not have jurisdiction over all replacement worker disputes. Knowing that there were other replacement worker issues, it did not deserve jurisdiction to consider them. Although the Panel stated that the sufficiency of notice depended on the "particular circumstances, " as the panel put it, the Panel did not reserve jurisdiction over the question of the sufficiency of notice in other factual contexts. Attorney Shipman conceded that another panel would have to decide whether the Agreement allowed the Authority to replace the Torrington replacement worker dispute. The Torrington transfer station replacement worker dispute was not submitted to the Panel. Even if it was, the panel did not reserve jurisdiction over the issue when it issued its order regarding the replacement worker provision and therefore. Finally, at least one member of the Panel conceded it did not have jurisdiction over the dispute therefore, the interim order is ultra vires and the court cannot enforce the interim order.
The Authority's third argument in support of its motion to vacate the interim order is that, in issuing the interim order, Egan and Shipman impermissibly engaged in ex parte receipt of evidence, held hearings and conducted deliberations without a member of the Panel present and issued an award without consulting with an absent panel member, citingOG/O'Connell Joint Venture v. Chase Family Ltd. Partnership No. 3,203 Conn. 133, 146-147, 523 A.2d 127 (1987). In that case, the ex parte communications and ex parte receipt of evidence was without notice to the opposing party. In this case, there was no receipt of evidence other than the letters of the Authority. All of the communications were procedural in nature,
In that case, the court held that conducting hearings, deliberating, issuing an award in the absence of and without consulting with the panel members and failing to give notice to the parties constituted misconduct which was unacceptable and prohibited under General Statutes § 52-418a (3). In this case, Egan and Shipman were confronted with an exigent circumstance created by the Authority. Under the exigent circumstances they acted reasonable. Egan and Shipman attempted to contact Nolin, who they reasonably considered to be a member of the panel, notwithstanding his letter. While Attorney Nolan had submitted his letter indicating that he had a conflict of interest, he did not formally resign. Moreover, the CT Page 14002 commercial dispute resolution procedures of the American Arbitration Association ("AAA") provide that, if for any reason an arbitrator is unable to perform the duties of office, the AAA may, on proof satisfactory to it, declare the office vacant. American Arbitration Association Commercial Dispute Resolution Procedures, R-21. No proof of vacancy had been presented to the AAA nor had the AAA declared the position vacant. Attempts were made to reach Nolan but, due to the fact that he was traveling outside of the country, those efforts were unavailing. In light of the exigency of the circumstances, the unrefuted diligence of Egan and Shipman's attempts to contact Nolin, the inclusion of counsel for both parties in all of its fact-finding proceedings, and the interim nature of the order, which sought only to maintain the status quo for a reasonable period of time so that Nolin could be contacted and the Panel could properly consider the matter, the court finds no misconduct on the part of the Panel.
The Interim Order is invalid, however, as it was issued in the absence and without the consent of Nolin. Under our law, "all the arbitrators to an arbitration matter shall meet and act together." General Statutes § 52-414. Generally, two of three arbitrators to whom matters in controversy were submitted may not make a valid award without consent of the other. Patterson v. Leavitt, 4 Conn. 50, 10 A. 98 (1822). The court notes that the District has not cited any legal authority in support of the validity of the interim order issued in the absence of Nolin.
One might argue that two of the three arbitrators should be able to issue an award in the absence of the third if that panel could issue an award on a majority vote. That argument disregards the deliberation process inherent in determining the outcome of an arbitration in which each arbitrator's perspective on the facts and the law are voiced and weighed by the other panel members before a decision is reached. Particularly in a case such as this, where the arbitrator appointed by the authority was not present, and the arbitrator appointed by the District was present and he together with the neutral arbitrator issued an award in favor of the District, the wisdom of the holding of Patterson is clearly illustrated and the holding should be followed. For the reasons, this court declines to enforce the interim order.
The Authority further argues that the District is not entitled to injunctive relief on two grounds. First, the Authority argues that the court lacks subject matter jurisdiction to issue an injunction. That argument is predicated upon the fact that the District has failed to comply with General Statutes § 52-422. As stated in the Authority's brief, citing Goodson v. State, 232 Conn. 175, 180, 653 A.2d 177 (1995), the Connecticut Supreme Court recognized that "an application for an order pendente lite pursuant to General Statutes § 52-422 is a CT Page 14003 special statutory proceeding. The statute confers definite jurisdiction upon a judge and it defines the conditions under which such relief may be given." The District has brought this action pursuant to General Statutes § 52-471, and not General Statutes § 52-422. The former statute provides that "[a]ny judge of any court of equitable jurisdiction may, on motion, grant and enforce a writ of injunction, according to the course of proceedings in equity, in any action for equitable relief when the relief is properly demandable . . ." By its terms, that statute also grants jurisdiction separate and distinct from that granted by §52-422. Accordingly the court has jurisdiction and the Authority's jurisdictional argument fails.
Secondly, the Authority argues that the District is not entitled to injunctive relief because the District cannot satisfy the requirements for a mandatory injunction. In order to qualify for injunctive relief the District must make four showings. It must show a likelihood of success on the merits; an imminent, substantial and irreparable injury, a lack of an adequate remedy at law and it must show that the balance of the equities are in its favor. Waterbury Teachers Assn. v. Freedom of InformationCommission, 230 Conn. 441, 446, 645 A.2d 978 (1994); Griffin Hospital v.Commission of Hospitals Health Care, 196 Conn. 451, 457588, 493 A.2d 229
(1985); Pet v. Dept. of Health Services, 207 Conn. 346, 370, 542 A.2d 672
(1988). The court is not mandated to grant injunctive relief, it is a matter within the sound discretion of the court. Emhart Industries, Inc.v. Amalgamated Local Union 376, U.A.W., 190 Conn. 371, 406, 461 A.2d 422
(1983)
The court believes that the District is likely to succeed on the merits. The Authority is required to give the District reasonable notice. The court heard no evidence to suggesting that the Districts' workers could not be trusted to remain on the job after notice was given or any other reason why they had to be replaced without any notice to the employees themselves. Notwithstanding its likely success on the merits, the court cannot find that the District would suffer imminent harm if a temporary injunction was not issued.
The long-standing and current law of this state is that there must exist a real or imminent threat that plaintiff will be wronged, that is — there must exist a substantial likelihood of immediate irreparable injury before an injunction may be issued. InternationalAssn. of Firefighters, Local 786 v. Serrani, 26 Conn. App. 610, 616,602 A.2d 1067 (1992); City of Los Angeles v. Lyons, 461 U.S. 95, 111
(1.983); Silitschanu v. Groeseeck, 12 Conn. App. 57, 64-65 (1987). A mere fear or apprehension of injury is insufficient. Moore v. Serafin,163 Conn. 1, 11, 301 A.2d 238 (1972) CT Page 14004
Nearly a month after the replacement, the court heard the District's motion for enforcement at which time Mr. Milano testified that all the displaced workers had been absorbed by the District and that no one had been laid off. In addition, he testified that the District employed many more summer workers than displaced workers. The District also acknowledged that it has more vacancies than the number of workers displaced. The District did not seek reimbursement from the Authority. The 1District did not establish that it had suffered an irreparable injury.
The District did argue that it would suffer irreparable injury if the displaced employees were not reinstated at the Torrington Transfer Station. Although the Authority stated that employee moral would suffer greatly, the Authority presented no evidence to support that claim and the absorption of the displaced workers would suggest that there is little reason for employee morale to suffer. As stated earlier, a mere fear or apprehension of injury is insufficient.
The District argues that it was harmed because the Authority breached their agreement by failing to give reasonable notice of approximately 30 days; however, the Authority failed to show that it had suffered any real harm as of the hearing date which was approximately 30 days after the replacements occurred. If no harm could be proven as that date, there is no substantial likelihood that any harm, irreparable or otherwise would result in the absence of an injunction.
Even if the Authority had given 30 days notice, there is no evidence that District employees would not be displaced. It would likely take more than thirty days to select arbitrators, draft a mutually agreeable submission to the panel, present evidence to the panel and receive a decision. The Panel took "the better part of a year" to resolve the request for proposal dispute, according to the District's. Therefore, the failure to give 30 days notice would not substantially increase the harm, if any, which the District would suffer.
The testimony established that any harm suffered by the District would be negligible. The displaced workers represent a minuscule percentage of the District's workforce and the ability of the District to absorb the displaced workers, both financially and productively, attests to the fact that the injury is not substantial. Moreover, the Authority had agreed to reimburse the District for thirty days of regular wages paid to any displaced workers who cannot be redeployed by the District; therefore, the District would not suffer a monetary loss as a result of the Authority's failure to give reasonable notice.
The nature of any harm established is not irreparable. An irreparable CT Page 14005 harm is one for which there is no redress, the victim of which cannot be restored. Murray v. Egan, 28 Conn. Sup. 204, 208 256 A.2d 844 (1969); NewLondon v. Perkins, 87 Conn. 229 87 A. 724 (1913); Gorham v. New Haven,82 Conn. 153, 157, 72 A. 1012 (1909). Whether such harm exists, depends primarily on the nature of the right which is injuriously affected rather than upon the pecuniary measure of the law sustained. See Patry v. Boardof Trustees, 190 Conn. 460, 472, 461 A.2d 443 (1983). To the extent that the District will suffer harm it is merely pecuniary as stated earlier.
The District asserts that the replacement was a huge blow to the morale of the District workers. The court finds that argument lacking as there was no evidence presented to support it and the facts suggest otherwise. As stated above, the District is a large and prosperous institution with many vacancies and many temporary summer workers. The District absorbed all of the displaced workers for nearly thirty days. There is no evidence that the District needed to or did in fact seek reimbursement from the Authority which the Authority offered to pay if the District could not redeploy the displaced workers. While the District claims that it was irreparably harmed by the Authority's failure to give the thirty days notice, it claims it is entitled to receive under the agreement, the District has not presented any evidence to establish any irreparable harm.
Finally, in order for an inunction to issue, there must be a lack of an adequate remedy at law. The parties have their contractual remedy of arbitration, which has already been
initiated. As stated above, the arbitration process is likely to take substantially more than thirty days to complete. Thus, an order which required the Authority to restore the District's employees at the Torrington Transfer Station and to give the thirty days notice required by the May 14, 2000 orders would be useless. The District's employees would still be displaced and the reinstatement and subsequent displacement would be even more disruptive than allowing the parties to proceed with arbitration and focus their energies on the central issues regarding the replacement. In fact, assuming the displacement was a blow to employee morale as the District argues, a second displacement would re-injure the District's employees. The District has not only an adequate remedy at law but a better remedy at law.
Finally, the equities must be in the District's favor in order for the court to issue an injunction. The equities are not in the District's favor. The Authority is simply attempting to exercise its acknowledged, unilateral right to replace workers for cost, quality of performance, responsiveness or other such factors as permitted by the agreement and decided by the Panel. The Authority presented evidence of cost, quality CT Page 14006 of performance, responsiveness and other deficiencies in the District's performance of the Agreement. The Panel found that the District had been overcharging its direct costs to the Authority and more than a year after the finding, that practice continues. Accordingly, the Authority has made a prima facie claim of both cost and responsiveness factors warranting a replacement of District workers. The Authority has also established that it can negotiate a much more favorable contract in the present marketplace. That appears to be the potentiality which the replacement worker provision was intended to address. Therefore, the equities appear to be in favor of the Authority rather than the District.
For the reasons stated above, the District's motion for an injunction is denied.
Vanessa L. Bryant, J.